IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**03-60654**

JAMES E. BILLIE,                                )         Case No.
                                                )
            Plaintiff,                          )         **CIV-MARRA**
                                                )
v.                                              )         MAGISTRATE JUDGE
                                                )         SELTZER
SEMINOLE TRIBE OF FLORIDA, a                    )         VERIFIED COMPLAINT
Federally recognized Indian Tribe, and          )
MITCHELL CYPRESS, DAVID                         )
CYPRESS, JOHN WAYNE HUFF SR.,                   )
MAX OSCEOLA, individually and as Tribal         )
Council members of the Seminole                 )
Tribe of Florida, JIM SHORE,                    )
Individually and as general counsel of the      )
Seminole Tribe of Florida, and PRISCILLA        )
SAYEN individually and as Secretary/Treasurer)
of the Seminole Tribe of Florida                )
            Defendants.                          )
_____)

FILED BY

2003 APR -3 PM 2:38

CLERK U.S. DIST. CT.
S.D. OF FLA - FTL

        Plaintiff James E. Billie ("Billie"), by and through the undersigned counsel, sues defendants

Seminole Tribe of Florida ("Tribe"), Mitchell Cypress ("Mitchell"), David Cypress ("David"), John

Wayne Huff ("Huff"), Max Osceola ("Osceola"),  Priscilla Sayen ("Sayen") and Jim Shore

("Shore"), and states:

        1.        This is an action by Billie against defendants for Writ of Mandamus, Writ of

Habeas Corpus, conspiracy, fraud, intentional infliction of emotional distress, and declaratory and

injunctive relief which is brought pursuant to 25 U.S.C. §1301-1303 of the Indian Civil Rights Act

of 1968 ("ICRA").

        2.        Jurisdiction in this court exists under 28 U.S.C. §1343(4).

1



3.      Venue for all causes of action lies within the Southern District of Florida as the acts which form the basis for the claims which are alleged, took place within the Southern District.

4.      Plaintiff Billie is a citizen of the State of Florida who resides on the Big Cypress reservation of the Tribe in Broward County, Florida.   The Tribe is a federally recognized Indian Tribe with its main reservation and operations located in Broward County, Florida.  Plaintiff Billie is a member of the Tribe who was duly elected as its Chairman in 1979 by a majority of its members.  Billie has served as Chairman of the Tribe's Tribal Council from 1979 until May 24, 2001, when he was unlawfully "suspended" indefinitely from office by means of a Resolution enacted by the Tribal Council.  The Resolution is attached hereto as Exhibit "A".  At the time of his suspension, Billie was serving a four (4) year term as Tribal Chairman until the election scheduled in 2004.

5.      Billie was subsequently removed from his duly elected position as Chairman of the Tribe on March 18, 2003. A copy of the charging statement and removal Resolution is attached hereto as Exhibit "B".

6.      Defendant Mitchell Cypress ("Mitchell") is a citizen of the State of Florida who resides in Broward County, Florida.  At all times material hereto, Mitchell was and is the Vice-Chairman of the Seminole Tribe and President of the Tribal Board.

7.      Defendant Max Osceola ("Osceola") is a citizen of the State of Florida who resides in Broward County, Florida.  At all times material hereto, Osceola was and is the Tribal Council Representative for the Hollywood reservation of the Seminole Tribe.

2

8.      Defendant David Cypress ("David") is a citizen of the State of Florida who resides in Broward County, Florida.  At all times material hereto, David was and is the Tribal Council Representative for the Big Cypress reservation of the Seminole Tribe.

9.      Defendant John Wayne Huff. ("Huff") is a citizen of the State of Florida who resides in Broward County, Florida.  At all times material hereto, Huff was and is Tribal Council Representative for the Brighton reservation of the Seminole Tribe.

10.     Defendant Jim Shore ("Shore") is a citizen of the State of Florida who resides in Broward County, Florida.  Shore is the general counsel of the Seminole Tribe.

11.     Defendant Priscilla Sayen ("Sayen") is a citizen of the State of Florida who resided in Broward County, Florida.  Sayen is the hired Secretary Treasurer of the Seminole Tribe.

## GENERAL ALLEGATIONS

12.     The Tribe is governed by and operates under a tribally approved Constitution ("Amended Tribal Constitution") ("Exhibit "𝓑") and Bylaws ("Bylaws") (Exhibit "𝓒") duly enacted under the provisions of 25 U.S.C. 467 as well as the laws of the State of Florida and the United States Constitution and applicable Federal laws enacted by Congress.  In order to protect scarce Tribal assets and to protect the individual rights of the Tribal members mandated by federal and Tribal law, the Tribe conducts its governmental business through the elected governing council. The Tribal Council consists of five members, three of whom are elected every two years from the Big Cypress, Hollywood, and Brighton reservations.  Two additional members, the Chairman and Vice-Chairman, are elected every four years by popular vote of the entire Tribe.  The Tribal Council is authorized to adopt ordinances and resolutions, which, if properly authorized, are considered to be the laws of the Tribe.

3

a.      The powers of the Tribal Council are defined in Article V of the Amended Tribal Constitution.  Those powers include the following:

> . . . subject to any limitation imposed by the Constitution or the Statutes of the United Sates, and subject further to all expressed restriction upon such posers contained in this Constitution and Bylaws.
>
> Section 1.      To negotiate with Federal, State and local governments and others on behalf of the Tribe . . .
> * * * * * * * * * * * * * * * * * *
>
> Section 12.     To promote and protect the peace, safety, health and general welfare of the tribe and its members.

b.      The Amended Tribal Constitution expressly prohibits the Tribal Council from delegating any of its constitutional authority in the absence of a resolution duly enacted by the Tribal Council in legal session. Article V of the Amended Tribal Constitution provides, in pertinent part as follows:

> Section 9(a)     No authorities contained in this Constitution may be delegated by the Seminole Tribal Council to tribal officials, district councils, or associations to carry out any function for which the Tribal Council assumes primary responsibility, except by ordinance or resolution duly enacted by the Tribal Council in legal session, and excepting also those specific requirements contained in the Bylaws of the Seminole Tribe of Florida.

c.      The official function and importance of tribal ordinances and resolution sis further defined and described in Article IV, Sections 1 ad 2 of the Tribal By-laws which provides as follows:

> Section 1.      All final decisions of the Tribal Council on matters of general and permanent interest to members of the Tribe and to tribal administration shall be embodied in ordinances . . .
> Section 2.      All final decisions of the Tribal Council on matters of temporary interest or relating to particular individuals, officials or committees shall be embodied in resolutions . . .

4

d.      So important are the rights of the individual members of the Tribe that even prior to the enactment of the Indian Civil Rights Act by Congress, 25 U.S.C. 1301 et. seq. the Seminoles created and embodied in their Amended Tribal Constitution limits on the powers of the Tribal Council and the protection of the rights of its members.

**Article IX**

**Section 1.      All members of the Seminole Tribe shall be accorded equal political rights and equal opportunities to participate in the economic resources and activities of the Tribe and no person shall be denied freedom of conscience, speech, association or assembly or due process of law, or the right to petition for the redress of grievances. . .**

e.      Based upon the powers and restrictions set forth above and imposed by the amended Tribal Constitution, no tribal official, employee or other person has the power to act to remove tribal officials, spend scarce tribal resources, deny a tribal member of due process or civil rights in the absence of constitutionally vested authority duly enacted in legal council session in accordance with the limitations and powers granted in the Amended Tribal Constitution.

f.      At all times material hereto, the Tribal Council was comprised of defendants Mitchell, David, Huff, and Osceola and plaintiff Billie, who served as Chairman. Defendant Shore, at all times material hereto, was the general counsel to the Tribe and Tribal Council.  Defendant Sayen, at all times material hereto was the constitutionally appointed Secretary Treasurer.  On information and belief, defendant Shore, as general counsel, prepared the Resolution and advised all members of the Tribal Council that it was legal under the Amended Tribal Constitution and Bylaws.

5

13.     On or about January 2000 Billie became aware that the scarce resources of the Tribe were being spent by the Tribal Council outside of the duly enacted budget resolutions passed in legal session.  Billie attempted to curtail this spending and took action to freeze accounts of council members who had overspent their allocation until such time as a new resolution could be passed to authorize the overspending.  This action to protect the scarce Tribal resources would prove to be the impetus behind all actions of the Council since that time, up to and including the filing of this action.

14.     On May 24, 2001, acting in their positions as Tribal Council members, defendants Mitchell, David, Huff, and Osceola passed a Resolution (Exhibit "A"), which, purported to suspend Billie from his position as Tribal Chairman for an indefinite period.  Billie was suspended indefinitely for alleged conduct, which constituted "gross neglect of duty. . . [which] adversely reflects upon the dignity and integrity of the Tribal Counsel . . . ."  The indefinite suspension will last at least until the conclusion of:  (i) a forensic investigation, and (ii) litigation which alleges sexual harassment styled: Christine O'Donnell v. James E. Billie, Case No. 01-6797-CIV-Middlebrooks (U.S.D.C. Fla. 2001).  ( Said action was subsequently dismissed for lack of subject matter jurisdiction and then refiled in State Court as Christine O'Donnell v. James E. Billie CASE NO. 01-020684 (08)and was subsequently dismissed with prejudice).

15.     Pursuant to the resolution, Billie was suspended from acting as Chairman in any way during his indefinite suspension.  Among other things, Billie is not allowed to attend the meetings of the Tribal Council.  Regular meetings of the Tribal Council are held bi-monthly, while "special meetings" can be called at any time.  A member of the Tribal Council who fails to attend

two regular meetings in succession, unless excused at the discretion of the other members of the Tribal Council, shall forfeit his office.

16.    From the time of his suspension the Tribe was governed by a partial Tribal Council consisting of the four remaining council members, Mitchell, David, Huff, and Osceola, who in concert undertook a systematic process to prevent Billie from returning to office, including but not limited to:

a.    Using Tribal resources to direct legal counsel to pursue frivolous lawsuits against Billie.

b.    Using Tribal resources to renegotiate contract previously entered into while Billie was acting Chairman for the sole purpose of securing lucrative contracts in favor of Osceola, David, Mitchell and Huff.

c.    Wasting scarce Tribal resources by canceling contracts entered into while Billie was Chairman, and in so doing costing the Tribe millions of dollars in penalties for the sole purpose of destroying businesses, entities, and Tribal resources to support the suspension of Billie.

d.    Coercing, advising, and promoting the filing of lawsuits by former employees against Billie to support his illegal suspension and ultimate removal.

e.    Conspiring with one another to permit the removal of scarce Tribal resources in excess of $100 million dollars in Billie's absence.

f.    Conspiring with one another to withhold evidence and information in a federal criminal investigation for the purpose of harassing Billie and causing damage to his reputation and emotional being.

g.      Conspiring with one another and legal counsel to violate the Amended Tribal Constitution including not honoring petitions to reseat the Chairman, illegally sitting as Acting Chairman of the Tribal Council, ignoring spending limitations, and singling out Billie for the purpose of unequal application of Tribal law.

h.      Conspiring to violate Billie's rights to freedom of association, freedom of conscience, and equal participation in the economic opportunities of the Tribe by cutting of his salary, overspending duly enacted budget allocations, and violating federal and tribal law by misusing scarce Tribal resources for their own personal benefit.

17.     For the next twenty months Billie was forced to endure public humiliation, legal expense in defense of six lawsuits filed by, or manipulated by the Tribe and its Council members. Ultimately after being unable to prevail in litigation and conspired pressure, the Tribal Council issued a Statement of Charges for the removal of Billie from his duly elected position as Chairman of the Tribe.

18.     On May 13, 2003 the Tribal Council met to determine whether Billie should be removed.  Prior to that time Billie had not been given the opportunity to properly examine the records to be used against him; was not permitted to have legal counsel; was not informed as to the procedure to be followed during the hearing; and was not permitted to call witnesses on his behalf or object to the proceedings.  A copy of the charging Statement, together with correspondence is attached hereto as Exhibit "**D**".

19.     On May 18, 2003 the Tribal Council voted to remove Billie.  A Copy of the resolution removing Billie is attached hereto as Exhibit "**D**".

8

20.     As a sovereign Indian tribe, the SEMINOLE TRIBE OF FLORIDA is culturally, politically, and economically distinct from the rest of non-tribal society and is dependent on the protections and procedures clearly set forth in the Amended Tribal Constitution to protect the members from the unlawful usurpation of power.  This is especially important to the Seminoles whose illiteracy rate among adult Tribal members is significant, and of those members over the age of forty, very few have obtained college degrees.

21.     Pursuant to section 4 of the Amended Constitution and Bylaws, the Tribal Council may remove any Tribal official or member of the Tribal Council by an affirmative vote of four-fifths (4/5) of its total membership for "gross neglect of duty or misconduct" reflecting on the dignity and integrity of the Tribal Council.  Before any vote of removal is taken, however, the subject official:

> shall be given a written statement of all charges filed against him at least ten (10) days before the meeting of the tribal council before which he is to appear and he shall be given an opportunity to answer any and all written charges at such meeting.

20.     Prior to the first action in May 2001 the Tribal Council did not provide notice to Billie of the meeting on May 24, 2001, at which it enacted the resolution suspending Billie from his position.  Nor did the Tribal Council provide Billie with a written statement of the reasons for the suspension, or an opportunity to respond thereto, before enacting the Resolution.  Billie has not been given a post-suspension opportunity to respond at any time.

21.     Billie first learned of the meeting, his suspension, and the alleged reasons therefore contained in the Resolution from a telephone call from his attorney Jim Shore at 11:00 p.m. the night prior to the May 24, 2001 meeting.

22.     At the meeting of May 24, 2001 Billie was falsely accused of sexual harassment and misspending of Tribal funds as part of the continuing conspiracy of the Council members. Affidavit of Christine O'Donnell is attached hereto as Exhibit "**E**".

23.     At the meeting of May 24, 2001 Billie was not permitted to put on any evidence or to defend his position and was held to a different standard than other Tribal Council members who had been the subject of similar accusations in the past.  (Mitchell Cypress was the subject of a sexual harassment charge and no action was taken)

24.     Following the meeting, sometime in February 2002 and pursuant to Article VIII, Section 1 of the Amended Constitution, Billie submitted a petition of approximately 30% of the eligible voters challenging the suspension and seeking to have him reseated as acting Chairman. Said petition was ignored by the Tribal Council who stated, contrary to and in violation of the Amended Constitution, that they would not consider any petition until such time as the forensic audit was completed.  Ironically, the forensic audit was controlled by the same individuals who were conspiring to keep Billie out of office.

25.     The jurisdiction of this Court, including the exhaustion of all tribal remedies, have been satisfied by Billie and/or have been waived and excused by defendants.

26.     Billie is obligated to pay his attorneys a reasonable professional fee for rendering the services necessary to enforce his rights in this court.

## COUNT I

## DECLARATORY JUDGMENT

27.     Billie incorporates by reference and realleges as if set forth fully herein the allegations in paragraphs one through 26.

10

28.     This is an action by Billie pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, for declaratory relief.

29.     The Tribe and its members are governed by its Amended Tribal Constitution and Bylaws, and ICRA, 25 U.S.C. §1301-1303, which guarantee every person under the Tribe's jurisdiction basic civil rights, including due process of law.

30.     An actual controversy exists between Billie and the members of the Tribal Council who purported to suspend him as to the meaning of the Amended Tribal Constitution and Bylaws and the right of the Tribal Council to indefinitely suspend Billie by resolution without affording him notice and an opportunity to be heard either before or after suspension.

31.     Defendants, as members of the Tribal Council and its general counsel, apparently contend that: (i) the Tribal Council possesses the power to indefinitely suspend Billie, as Chairman, by resolution; and (ii) the Tribal Council may suspend Billie indefinitely without affording him any procedural rights under the United States Constitution, and the Amended Tribal Constitution, and other applicable laws; and (iii) may remove Billie from office without following any form of procedural due process to protect his liberty and property rights as set forth in the Amended Tribal Constitution.

32.     Billie contends that: (i) the Tribal Council does not have the power to suspend him indefinitely via resolution; and (ii) action by the Tribal Council which strips him of his position as Chairman and injures his reputation by imputing improper and/or unlawful conduct cannot be taken without affording him basic procedural rights which are guaranteed by due process

33.     Billie requests that this district court exercise its discretionary jurisdiction to adjudicate the parties' rights under the Amended Tribal Constitution, Bylaws and applicable law.

11

34.     Billie has no adequate remedy at law and will be irreparably injured unless this court exercises its discretion and renders the requested declaration.

35.     WHEREFORE, plaintiff Billie requests that this court exercise its discretion to enter a declaratory judgment as to his rights under the United States Constitution, the Amended Tribal Constitution and the ICRA, 25 U.S.C. § 1302(8), as to his indefinite suspension as Chairman of the Tribal Council by Resolution, plus enter further relief deemed appropriate.

## COUNT II

## INJUNCTION

36.     This is an action by Billie against defendants Mitchell, David, Huff, Osceola and Shore for a preliminary and permanent injunction.

37.     Billie incorporates by reference and realleges as if set forth fully herein the allegations in paragraphs 1 through 35.

38.     Billie has a substantial likelihood of success on the merits.  Billie has a constitutionally protected property and due process right to continue to serve as Chairman and avoid the stigma to his reputation, which will arise from an indefinite suspension.  Defendants violated Billie's rights under the United States Constitution, Amended Tribal Constitution, and ICRA, as follows:

(i)     The Tribal Council acted without authority because it does not have the power to suspend him by Resolution;

(ii)     Billie was not informed or notified of the Tribal Council Meeting on May 24, 2001 at which he was indefinitely "suspended" in violation of the Amended Tribal Constitution, Article IV, Section 4;

12

(iii)    Billie was not given a written statement of any charges filed against him at least ten (10) days prior to the Tribal Council meeting held May 24, 2001, in violation of the Amended Tribal Constitution, Article IV, Section 4;

(iv)    Billie was not permitted to answer the allegations contained in the Resolution passed during the Tribal Council meeting of May 24, 2001 before his suspension in violation of the Tribal Constitution, Article IV, Section 4; and

(v)    Billie has not been given a post-suspension opportunity to be heard.

(vi)    Billie was removed without following the provision of the Amended Tribal Constitution.

(vii)    Billie was removed without due process.

(viii)    Billie's petition to be reseated was ignored by the Tribal Council in violation of the Amended Tribal Constitution.

39.    Billie will be irreparably injured by the indefinite suspension without affording him any process.  Billie has essentially been convicted by the Tribal Council for unspecified  wrongs without prior notice and an opportunity to be heard (or, even, a subsequent hearing) resulting in the loss of his elected office as Chairman and injury to his reputation.  The constitutional injuries caused Billie by his indefinite suspension constitute irreparable injury per se.

40.    Billie does not have an adequate remedy at law.  The Seminole Tribe cannot be ordered to award Billie back pay or other benefits, which he has lost and will lose during the duration of this lawsuit.  In stark contrast, Billie has sustained a stigma to his reputation of unlawful conduct and lost his position as Chairman and employment with the Seminole Tribe.  Billie has

effectively served as Tribal Chairman since 1979 at the wish of the electorate of the entire Tribe. Billie has already sustained injuries, therefore, which are constitutional in magnitude.

41.     The injury to Billie will outweigh any injury sustained by defendants as a result of an injunction against the indefinite suspension.  Defendants are not injured by an injunction, which compels them to follow the procedures for the removal, which are contained in the Amended Tribal Constitution and Bylaws of the Seminole Tribe.

42.     In stark contrast, Billing has sustained a stigma to his reputation of unlawful conduct and lost his position as Chairman and employment with the Seminole Tribe.  In essence, Billie has been convicted for an alleged wrong without due process.  Billie has already sustained injuries, therefore, which are constitutional in magnitude.

43.     An injunction would serve the public interest and interest of the Tribe. The Tribe has a strong interest in the enforcement of its Amended Tribal Constitution and Bylaws, which have been blatantly violated.  The Tribe also has an interest in Billie continuing as Chairman of its Tribal Council, an office to which the entire tribe has elected him since 1979 and which he has served in successfully for over twenty (20) years.

44.     WHEREFORE, Billie demands judgment for a preliminary and permanent injunction which compels defendants to reinstate him to his position as Chairman, plus award any and all other relief deemed appropriate.

## COUNT III
## WRIT OF MANDAMUS

45.     This is an action by Billie against Defendants Mitchell, Cypress, Osceola, Huff and Shore for Writ of Mandamus.

14

46.     Billie incorporates by reference and realleges as if set forth fully herein the allegations in paragraphs 1 through 45.

47.     Billie was not informed or notified of any Tribal Council Meeting prior to May 24, 2001 in clear violation of the Tribal Constitution.

48.     Billie was not provided with written notice of the Tribal Council Meeting held May 24, 2001 in violation of the Tribal Bylaws Article V, Section 1.

49.     Billie was not given a written statement of any charges filed against him at least ten (10) days prior to the Tribal Council Meeting held May 24, 2001, or at anytime prior to said meeting in violation of the Tribal Constitution Article IV Section 4.

50.     Billie was not permitted opportunity to answer the allegations contained in the Resolution passed during the Tribal Council Meeting of May 24, 2001 in violation of the Tribal Constitution Article IV Section 4.

51.     Billie was not permitted to properly view the documents to be used against him at the March 13, 2003 hearing to remove him from office.

52.     Billie was not permitted to have legal counsel present during the removal hearing of March 13, 2003 prior to the action taken to take his property and liberty as a Tribal Chairman.

53.     Billie was not permitted to challenge the evidence presented by the Tribal Council at the removal hearing of March 13, 2003 and was specifically admonished to answer the questions and not stray from the questions in responding to the charges by Acting Chairman Max Osceola.

54.     ICRA and the Amended Tribal Constitution mandates that the Tribe take no action without due process of law.

55.     ICRA and the Amended Tribal Constitution mandate that the Tribe give all persons within its jurisdiction equal protection of its laws.

56.     The Amended Tribal Constitution mandates that the Tribal council does not have the authority to take any action in violation of the protections afforded members of the Tribe under the Amended Tribal Constitution.

57.     That the willful and malicious actions of the Defendants violated the provisions of ICRA, the Tribal Constitution, and Tribal Bylaws.

58.     Billie is **"any person"** as defined under the provisions of ICRA and possesses a clear legal right to the protections guaranteed therein.

59.     Defendants have a clear legal duty to comply with the provisions of the Tribal Constitution and Bylaws and to ensure that their actions comply with ICRA.

60.     That Billie is without any adequate alternative remedy to obtain relief and compliance with the applicable Tribal and federal laws.

WHEREFORE Plaintiff demands a peremptory Writ of Mandamus commanding Defendants to comply with the aforementioned Tribal and federal laws and compensate Plaintiff for the loss of use and enjoyment of his office and liberty during the period that said action was wrongfully taken and award appropriate counsel fees and costs along with all other remedies that the Court deems just and appropriate.

## COUNT IV
## WRIT OF HABEUS CORPUS

61.     This is an action by Billie against Defendants Mitchell, Cypress, Osceola, Huff and Shore for Writ of Habeas Corpus.

16

62.     Billie incorporates by reference and realleges as if set forth fully herein the allegations in paragraphs 1 through 62.

63.     Billie makes application for a Writ of Habeas Corpus against the named Defendants in that Petition is unlawfully detained by Defendants and restrained of his liberty without due process of law in violation of the United States Constitution, Amended Tribal Constitution and the Indian Civil Rights Act of 1968.

64.     Billie was charged with nebulous and non-specific charges and then without a due process hearing, Billie was stripped of his duly elected position of Chairman of the Tribal Council.

65.     Billie alleges that Defendants were at all times members of the Tribal Council and were individuals who were given official authority to bring criminal type charges and cause the removal of Billie as Chairman.

66.     Billie was falsely accused of embezzlement of Tribal funds, removal of Tribal funds, associating with individuals who were not loyal to the Tribe, assisting individuals in defense of criminal charges in foreign countries, and keeping information from Tribal Council members. Billie was then removed as Chairman without being allowed to defend himself, appear with legal counsel at his own expense, and to examine the evidence and witnesses against him.

67.     The actions of Defendants were done without any formal civil or criminal charges and have cause, in addition to a detention and a restraint on his liberty, a violation of Billie's rights under the Indian Civil Rights Act of 1968 as follows:

a.     Billie was not able to confront any witnesses against him, was not entitled to produce witnesses in his favor, was not afforded the assistance of defense counsel, and was not permitted time to properly review the evidence against him.

17

b.      Billie was denied his rights under 25 U.S.C. 1302(7) in that by removing Billie from his duly elected position Defendants have inflicted a cruel and unusual punishment.

c.      Billie was denied his rights under 25 U.S.C. section 1302(8) in that he was denied equal protection of the laws.

d.      Billie was denied his rights under 25 U.S.C. 1302(8) in that he was deprived of his property without due process of law.

e.      Billie was denied his rights under 25 U.S.C.1302(1) in that Defendants have interfered with his right to free association, free speech, and redress of grievances.

68.     Billie alleges that Defendants while acting in an official capacity of the Seminole Tribe have caused Billie o suffer an actual or potential restraint in his liberty in that as a result of his removal he has lost individual recognition as Chairman of the Seminole Tribe and the benefits that attach to that office.

69.     Billie alleges that the actions of Defendants in stripping him of his duly elected position constitute sanctions so severe that they are beyond any civil sanctions the Tribe has ever given for any similar or like occurrences and are in the nature of severe criminal sanctions.

70.     This is the first application that Billie has filed for relief in this matter and has made no other application to any other court for this Writ of Habeas Corpus.

71.     Billie has no other remedy at law or in equity and has exhausted all administrative and Tribal remedies.  If this Court does not grant Billie's Writ of Habeas Corpus Billie will be left without any possibility of relief from the illegal detention and restraint on his liberty from the illegal criminal sanctions that have been imposed upon him.

18

WHEREFORE, Billie respectfully prays that this Court direct Defendants to Show Cause why a Writ of Habeas Corpus should not be issued at a time and place to be specified in said Writ to the end that this Court may inquire into the cause of Billie's detention and restraint on his liberty; and that the Court issue an order directing Defendant's to discharge Billie from their custody and from the detention and restraint on Billie's liberty as set forth above; and that this Court enter an order vacating Billie's conviction for unspecified criminal charges, an order vacating Billie's removal, an order reinstating Billie to office, and an order granting such other and further relief as the court deems just and proper under the circumstances.

**COUNT V**
**PROFESSIONAL NEGLIGENCE**
**AGAINST JIM SHORE, ESQUIRE, INDIVIDUALLY**

72.     Plaintiff BILLIE does hereby realleges and adopt  paragraphs 1 through 71 above as if fully set forth hereinafter.

73.     This is an action for legal malpractice between JAMES E. BILLIE and Defendant JIM SHORE.

74.     That SHORE at all times material hereto is an employee of the Seminole Tribe of Florida.

75.     (a)     That SHORE has been employed as the General Counsel of the TRIBE for at least the last twenty years.

(b)     In the capacity as General Counsel, SHORE provided legal advice and counsel to BILLIE and the Tribal Council including but not limited to the validity, authority and consequences of resolutions and Ordinances adopted by the TRIBE under its Constitution.

(c)     That SHORE advised the Tribal Council and BILLIE that Ordinance C-01-95

19

would insulate and protect BILLIE, the Tribal Council, and its employees from any and all actions brought against them regardless of whether said actions were negligent, wrong, improper or outside the scope of BILLIE or the Tribal Council's authority.

(d)     That SHORE advised BILLIE that resolution C-289-00 granted to BILLIE sole discretionary authority to spend Tribal assets as he saw fit, without review or question from the TRIBE or Tribal Council.

76.     That at all times material to this action SHORE was the sole legal counsel upon whom BILLIE relied for the purpose of advising the TRIBE, BILLIE and the Tribal Council as to the conduct and authority of Tribal Officials

77.     That SHORE had a duty of care to non-negligently conduct his activities as an attorney generally and as an attorney in the field of Indian Tribal Laws, specifically, as he held himself out to be competent in the field of Indian Tribal Laws.

78.     SHORE had a duty of care to render legal services and advice on behalf of BILLIE in a manner that is consistent with the standard of legally competent attorneys licensed with the Florida Bar in the relevant geographic area.

79.     That SHORE breached his duty to BILLIE by failing to exercise reasonable care in his legal advisory capacity and representation of BILLIE on all legal matters by, *inter alia*:

(a)   failing to adequately review Ordinance C-01-95, in accordance with the requirements of the Amended Constitution and By-laws of the Seminole Tribe of Florida;

(b)   failing to properly check and review resolution C 125-99 and resolution C 289-00 and the Personnel Policy Manual;

(c)    negligently failing to professionally and adequately advise BILLIE on all legal

matters relevant to the Ordinances and Resolutions;

(d)   negligently failing to adequately protect the rights and interests of BILLIE relative to his expressed desires;

(e)   negligently failing to generally represent and advise BILLIE in a reasonable and professional manner under the circumstances;

(f)   participating in and directing the actions of the Tribal Council and its current legal advisors to pursue actions against BILLIE for actions of BILLIE conducted while he was acting Chairman of the TRIBE.

80.     That the conduct of SHORE in the instant case constituted a deviation from and was less than the standard of care a reasonable attorney would have undertaken in like circumstances on behalf of a client in a situation similar to that of BILLIE in similar circumstances.

81.     That as a result of the actions of SHORE, BILLIE has suffered damages including but not limited to loss of his position as Tribal Chairman, lost wages, lost benefits, legal fees, emotional damages, damages to reputation, lost opportunity, and additional damages to be determined at trial.

WHEREFORE, BILLIE requests this Court grant relief against SHORE for lost wages, lost benefits, legal fees, emotional damages, damages to reputation, lost opportunity and any and all other damages the Court deems just and proper.

## COUNT VI
## FRAUD

82.     This is an action by Billie against Defendants Mitchell, Cypress, Osceola, Huff, Sayen and Shore for Fraud.

21

84.     Billie incorporates by reference and realleges as if set forth fully herein the allegations in paragraphs 1 through 81.

85.     That while acting as Chairman of the Tribe, the Defendants did pass resolutions and Ordinances that Billie relied on to grant him authority and protection to carry out the duties of his office.

86.     That the Defendants did pass Resolution C-289-00 for the purpose of inducing BILLIE into believing he had funds available to him to spend in any manner that he determined was appropriate.

87.     That said funds were discretionary with no obligations or other requirements set forth in Resolution C-289-00 prior to said funds being spent or reporting requirements to the Defendants or Tribe after said funds were spent.

88.     That the Defendants did pass Ordinance C-01-95 for the purpose of creating and defining the protections of sovereign immunity for its leaders and employees.

89.     That said Ordinance clearly states that the elected official and employees of the Tribe are immune from suit for any actions they commit, including actions of negligence, mistake, or impropriety.

90.     That said Ordinance was passed by the Defendants for the purpose of inducing BILLIE to believe that his actions while Chairman were immune from any suit brought against him, even if said actions were negligent, improper, or done by mistake.

91.     That the COUNCIL did pass resolution C-125-99 granting to BILLIE the sole responsibilities of implementing and interpreting the wages, and terms of the Tribe's personnel policy manual.

92.     That said resolution was passed by COUNCIL to induce BILLIE to believe and rely that he, and only he, had the sole discretion and authority to interpret and implement the provisions of the personnel policy manual.

93.     That BILLIE did rely on resolution C-125-99 in that it granted him the authority to determine compensation packages and other enumeration for employees of the Tribe without any requirement for prior consent or approval from the COUNCIL.

94.     That BILLIE did rely on resolution C-289-00 in that it granted to him a discretionary account containing funds that he could spend as he in his sole discretion determined to be appropriate.

95.     That BILLIE did rely on the protections afforded him in accordance with C-01-95 in that any actions taken in reliance on the aforementioned resolutions would be beyond question or suit by any party as BILLIE's actions would be within the scope of authority that the COUNCIL could grant to him and did in fact grant to him through the passage of C-125-99 and C-289-00.

96.     That BILLIE did rely on other resolutions authorizing him to purchase the Gulfstream V, explore business ventures in foreign countries for the purpose of investing Tribal funds; delegations of Sayen's authority to handle the Tribal investment account; and in all manners to act as Chairman of the Tribe.

97.     That as a result of BILLIE's reliance on these resolutions and Ordinances he did act and carry out the functions of his office within the scope of authority he believed he had been granted and the protections afforded to him under the Tribe's sovereign immunity.

98.     That as a result of BILLIE's reliance on these resolutions and Ordinances, BILLIE has been removed from office and suffered damages for lost wages, lost reputation, attorneys fees and

other damages in defense of actions brought by Defendants, including the instant action which gives rise to these claims.

WHEREFORE, BILLIE requests this Court grant relief against COUNCIL for lost wages, lost benefits, legal fees, emotional damages, damages to reputation, lost opportunity and any and all other damages the Court deems just and proper.

## COUNT VII
## CONSPIRACY

99.     This is an action for Conspiracy against Defendant Shore, Mitchell, Sayen, Osceola, and David.

100.     Billie incorporates by reference and realleges as if set forth fully herein the allegations in paragraphs 1 through 98.

101.     That on or about November 15, 1999, Billie undertook to protect the assets of the Tribe by preventing expenditures of Tribal assets in violation of the Tribes resolutions and per capita gaming distribution Ordinance.

102.     That Billie discovered that the Tribal Council members were exceeding their allocations and spending more funds than were permitted by the duly enacted resolutions of the Tribe.

103.     That Billie directed that no more loans or expenditures would be approved.

104.     That after issuing this directive, David and Mitchell on or about April 15, 2000, participated in a telephone conference with Sayen held an unauthorized meeting and approved the expenditure of an additional $1.5 million dollars to David.

105.    That said meeting did not comply with the provisions of the Tribal Constitution and the procedure for approving expenditures and funding.

106.    That upon learning of this meeting Billie attempted to prevent the funds from being issued to David.

107.    That David and Mitchell sought the advice and direction of Shore after learning that Billie was attempting to stop the unauthorized distribution of Tribal assets.

108.    That Shore advised David and Mitchell that the only way to stop Billie was to remove him from office.

109.    That at Shores direction and with his help and counsel, David and Mitchell enlisted the help and assistance of Christine O'Donnell a former Tribal employee.

110.    That Shore directed O'Donnell to file a sexual harassment claim against Billie and the Tribe.

111.    That David and Mitchell met with O'Donnell and assisted her in filing the sexual harassment claim.

112.    That persons in Shore's office either prepared, or assisted in the preparation of the sexual harassment claim filed against Billie with the EEOC as evidenced by the notarized signature on the EEOC form attached hereto as Exhibit " ?".

113.    That after filing this claim, Mitchell, David and Shore continued to advise O'Donnell and directed her to file legal actions in federal court against Billie.

114.    That the claim of sexual harassment had no merit and was used by David, Mitchell and Shore for the purpose of building a basis for removing Billie from office as evidenced by the affidavit of Christine O'Donnell attached hereto as exhibit "?".

25

115. That after O'Donnell filed the action for sexual harassment David and Mitchell, with the advice and direction of Shore prepared a resolution to suspend Billie from office.

116. That Mitchell, David and Shore acted in concert at all times material hereto for the purpose of interfering with and preventing Billie from doing his duly elected job as Chairman of the Tribe.

117. That Mitchell, David and Shore acted outside of any authority or power granted to them in their capacities as elected officials and employees of the Tribe and abused that power to prevent Billie from economic opportunity and carrying out the duties of his office.

118. That individually, David and Mitchell do not have authority to carry out any actions against Billie to remove him from office, however, in concert with Shore and with the vote of Osceola and assistance of Sayen as Secretary Treasurer approving the distribution they did possess the ability to vote and remove Billie from office.

119. That the actions of David, Mitchell and Shore were a violation of Tribal and State law and constitute a restraint of trade as set forth at F.S.A. 542.18.

120. That as a result of the actions of David, Mitchell and Shore Billie was suspended from office and ultimately removed from office, losing wages, economic opportunities, and causing damage to his reputation.

121. That as a result of the actions of Sayen in failing to carry out the duties of her office as mandated by the Tribal Constitution Billie was removed from office and with the help of Sayen David, Mitchell and Osceola were able to expend monies without authority and in violation of Billie's directive to prevent such expenditures.

122.     That without the conspired effort of the named parties, each of who failed to carry out the duties of their office and acted in violation of the duties of their office, Billie was removed and suffered damages.

WHEREFORE, Billie demands judgment against David, Mitchell, and Shore for lost wages, emotional harm, loss of economic opportunity, attorney fees, and punitive damages as permitted by statute together with any and all other relief the court deems just and proper under the circumstances.

**COUNT VIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

123.     This is an action for Intentional Infliction of Emotional Distress against Mitchell, Sayen, Shore, David, and Osceola.

124.     Billie realleges and incorporates by reference paragraphs 1 through 122 above as if fully set forth hereinafter.

125.     That the actions of Defendants detailed and set out above were done and conducted in violation of the Indian Civil Rights Act, Tribal Constitution, and laws of the Tribe.

126.     That the actions of Defendants was intentional and designed for the sole purpose of defaming Billie and destroying his reputation as the leader of the Seminole Tribe for the past 24 years.

127.     That in addition to the above referenced actions the Defendants also took action to direct various law firms to file frivolous and harassing legal actions against Billie causing him to incur attorney fees and costs and further damaging his reputation in the community.

128.    That the Defendants actions were done without duly enacted resolutions and outside of the authority of their elected offices.

129.    That the actions of Defendants were negligent and reckless with the sole purpose of supporting their ulterior motive of removing Billie and preventing him from running for office and resting control of the Tribe from him although he had been duly elected to the position of Chairman.

130.    That the conduct of the Defendants was outrageous as demonstrated by the Defendants failure to follow the protections given to Billie under the Indian Civil Rights Act and the Tribal Constitution.

131.    That the violations of Tribal and federal, as well as the actions of Defendants in pushing O'Donnell to file false sexual harassment claims were further evidence of the outrageous conduct of the Defendants offensive to the members of the Tribe and the permitted authority granted to the Defendants in their elected offices.

132.    That the actions of Defendants caused Billie to suffer emotional distress and mental anguish including but not limited to his loss of reputation and position in the community that he represented.

133.    That the emotional distress suffered by Billie was beyond that of any normal level due to the lengths and depths that the Defendants undertook for a period of two years to create false and misleading evidence and statements to defame and harass Billie.

134.    That the actions of Defendants was egregious and should not be permitted or accepted as regular and permissible behavior in the Tribal community and was offensive to the community as a whole.

28

WHERFORE, Billie demands judgment against Defendants Mitchell, Shore, David, Osceola, and Sayen for emotional distress, attorney fees, and any and all other relief the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

135.    Billie hereby requests trial on all issues by jury.

Respectfully submitted this __\\__ day of _____ 2003.


SAUNOOKE LAW FIRM, P.A.
*Attorneys for Plaintiff James E. Billie*
18630 S.W. 39th Court
Miramar, Fl. 33029
Telephone: (561) 302-5297


By_____
Robert O. Saunooke, Esq.
Florida Bar No. 972827

29

## VERIFICATION

STATE OF FLORIDA            )
                           ) ss.
COUNTY OF BROWARD           )

Before me the undersigned did personally appear JAMES E. BILLIE, who is personally known to me, who being duly sworn did affirm and say that he had read the matters set forth hereinabove and that the same were true and correct as to his own personal knowledge.

This 3/ day of March 2003.

_____
JAMES E. BILLIE

_____
Notary Public
Commission Expires:

Robert O. Saunooke
Commission #DD173215
Expires: Dec 22, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

JAMES E. BILLIE,                              )       Case No. _____
                                             )
            Plaintiff,                       )
                                             )
v.                                           )       **APPENDIX**
                                             )
SEMINOLE TRIBE OF FLORIDA, a                 )
Federally recognized Indian Tribe, and       )
MITCHELL CYPRESS, DAVID                      )
CYPRESS, JOHN WAYNE HUFF, SR.,               )
MAX OSCEOLA, individually and as Tribal      )
Council members of the Seminole              )
Tribe of Florida, JIM SHORE,                 )
Individually and as general counsel of the   )
Seminole Tribe of Florida, and PRISCILLA     )
SAYEN, individually and as Secretary         )
Treasurer of the Seminole Tribe of Florida,  )
                                             )
            Defendants.                       )
_____    )

| | |
|---|---|
| A. | Resolution regarding Suspension of James E. Billie as Chairman |
| B. | Amended Constitution of the Seminole Tribe of Florida |
| C. | Bylaws of the Seminole Tribe of Florida |
| D. | Removal Resolution |
| E. | Affidavit of Christine O'Donnell |

Respectfully submitted,

SAUNOOKE LAW FIRM, P.A.
Attorneys for Plaintiff James E. Billie
Robert O. Saunooke, Esq., Florida Bar No. 972827
18620 S.W. 39ᵗʰ Court
Miramar, FL 33029
Tel: (561) 302-5297

By: _____
        Robert O. Saunooke, Esq.

L:\ACTIVE\LitBillie,J\Pleadings\Appendix.wpd

1

RE:   SUSPENSION OF JAMES E. BILLIE AS CHAIRMAN OF THE TRIBAL
      COUNCIL OF THE SEMINOLE TRIBE OF FLORIDA

                              SEMINOLE TRIBE OF FLORIDA
                              HOLLYWOOD, FLORIDA

Resolution No. C-_____

WHEREAS,  the Seminole Tribe of Florida is an organized Indian tribe as defined in Section 16
          of the Act of June 18, 1934, as amended; and

WHEREAS,  the Seminole Tribe of Florida is a sovereign Indian tribe recognized and designated
          as such pursuant to the Act and as a part of its separate sovereign status, the Seminole
          Tribe of Florida is governed in part by the Amended Constitution and By-laws of the
          Seminole Tribe of Florida as well as ordinances and resolutions duly enacted by the
          Tribal Council of the Seminole Tribe of Florida sitting in legal session; and

WHEREAS,  the members of the Seminole Tribe of Florida, in enacting the Amended Constitution
          and By-laws of the Seminole Tribe of Florida, formed and organized the Seminole
          Tribal Council in order to promote justice, ensure tranquility, encourage the general
          welfare, safeguard the interests of the Tribe and secure the blessings of freedom and
          liberty for tribal members and their posterity; and

WHEREAS,  Article IV, Section 4 of the Amended Constitution and By-laws of the Seminole Tribe
          of Florida requires, among other things, that tribal officials and members of the
          Tribal Council refrain from conduct which includes any conduct which constitutes
          gross neglect of duty or misconduct reflecting on the dignity and integrity of the
          Tribal Council, as the constitutionally ordained governing body of the Seminole
          Tribe of Florida; and

WHEREAS,  Article V, Section 8 of the Amended Constitution and By-laws of the Seminole Tribe
          of Florida grants unto the Tribal Council the non-delegable duty to adopt resolutions
          regulating the procedures of the Seminole Tribal Council, its officials and
          committees in the conduct of tribal affairs; and

WHEREAS,  Article V, Section 12 imposes upon the Tribal Council the non-delegable duty to
          promote and protect the peace, safety, health and general welfare of the Tribe and its
          members; and

WHEREAS,  the elected Chairman of the Tribal Council of the Seminole Tribe of Florida, James
          E. Billie, has been named as a party defendant in a case presently pending in the
          United States District Court for the Southern District of Florida captioned: Christine
          O'Donnell v. James E. Billie, Case No. 01-6797-CIV-Middlebrooks which alleges
          serious misconduct against the Chairman both individually and during the
          performance of his duties as Chairman of the Tribal Council of the Seminole Tribe
          of Florida; and

FILE COPY
Fax _____  Mail _____
Date: 5/24/01

RE:   SUSPENSION OF JAMES E. BILLIE AS CHAIRMAN OF THE TRIBAL
      COUNCIL OF THE SEMINOLE TRIBE OF FLORIDA

(Resolution No. _____)

Page 2

WHEREAS,   the allegations contained within the complaint filed against James E. Billie in the
           aforesaid lawsuit clearly and adversely reflect upon the dignity and integrity of the
           Tribal Council of the Seminole Tribe of Florida of which James E. Billie is the
           elected Chairman; and

WHEREAS,   newspaper reports have alleged and purportedly documented the involvement of
           James E. Billie in matters which, if true, constitute gross neglect of duty and, in any
           event, charge misconduct which also clearly and adversely reflects upon the dignity
           and integrity of the Tribal Council as the constitutionally constituted governing body
           of the Seminole Tribe of Florida; and

WHEREAS,   the Tribal Council has determined that it is in the best interest of the Tribe and its
           members that James E. Billie be suspended, effective immediately, as the Chairman
           of the Tribal Council of the Seminole Tribe of Florida pending the outcome of the
           aforedescribed lawsuit and the conclusion of the forensic investigation previously
           authorized by the Tribal Council, following which further action shall be taken by the
           Tribal Council which shall include, but may not be limited to, reinstatement to office,
           removal from office or other such action as is necessary and proper in accordance
           with the Amended Constitution and By-laws of the Seminole Tribe of Florida; and

WHEREAS,   the Tribal Council is otherwise fully advised.

NOW THEREFORE BE IT RESOLVED: that, pursuant to Article IV, Section 4 and Article V,
Section 8 of the Amended Constitution and By-laws of the Seminole Tribe of Florida, James E.
Billie, as the Chairman of the Tribal Council of the Seminole Tribe of Florida, is hereby suspended
from office, effective immediately, pending the outcome of the case captioned: Christine O'Donnell
v. James E. Billie, United States District Court for the Southern District of Florida, Case No. 01-
6797-CIV-Middlebrooks as well as the conclusion of the forensic investigation previously authorized
by the Tribal Council following which appropriate action will be taken by the Tribal Council which
shall include, but may not be limited to, reinstatement to office, removal from office or such other
action as is necessary and appropriate in order to promote and protect the peace, safety, health and
general welfare of the Tribe and its members as well as maintain the dignity and integrity of the
Tribal Council. The basis for this suspension arises from (1) the provisions of Article IV, Section
4, which forbids gross neglect of duty or misconduct reflecting on the dignity and integrity of the
Tribal Council; (2) the non-delegable duties of the Tribal Council set forth in Article V, Section 8
which requires the Tribal Council to adopt resolutions regulating the procedures of the Seminole
Tribal Council, its officials and committees in the conduct of Tribal affairs;  and (3) Article V,
Section 12 which requires that the Tribal Council take such steps as are necessary and appropriate
to promote and protect the peace, safety, health and general welfare of the Tribe and its members;
and

RE: SUSPENSION OF JAMES E. BILLIE AS CHAIRMAN OF THE TRIBAL COUNCIL OF THE SEMINOLE TRIBE OF FLORIDA

(Resolution No. _____)

Page 3

BE IT FURTHER RESOLVED: that by virtue of this suspension, the Chairman shall not preside over meetings of the Tribal Council nor shall he exercise any authority specifically delegated to him as provided in Article V, Section 9 of the Constitution in his capacity as Chairman. Such duties shall be reassigned after further consideration of such matters by the Tribal Council; and

BE IT FURTHER RESOLVED: that during this period of suspension, the Chairman shall be regarded as having absented himself from meetings of the Tribal Council such that an acting Chairman shall be appointed by the remaining members of the Tribal Council from among those elected members as contemplated by Article I, Section 1 of the By-laws of the Seminole Tribe of Florida; and

BE IT FURTHER RESOLVED: that during the period of suspension, the Chairman shall not appear at or reside over any official or unofficial matter holding himself out to be Chairman of the Tribal Council of the Seminole Tribe of Florida, it being the intention of the Tribal Council to suspend the Chairman pending the outcome of the aforedescribed litigation as well as the forensic investigation previously authorized by the Tribal Council; and

BE IT FURTHER RESOLVED: that during the period of suspension, any attempt on the part of the Chairman to tender his resignation or take any other action in an effort to divest the Tribal Council of its duty and responsibility to investigate this matter and either vindicate the Chairman or remove him for cause shall be refused, it being determined by the Tribal Council to be in the best interest of the Tribe and its members to make a full, fair and complete determination as to whether the Chairman should be reinstated or removed from office or be subject to such other and further measures as are deemed necessary and appropriate by the Tribal Council on behalf of the Tribe and its membership; and

BE IT FURTHER RESOLVED: that that the Tribal Council of the Seminole Tribe of Florida hereby authorizes and directs the Secretary/Treasurer of the Tribe to carry out the intent of the Tribal Council expressed in this resolution by coordinating with the Tribal Human Resources Department Director and other Tribal Department Directors in implementing the suspension of James E. Billie as Chairman of the Tribal Council; and

BE IT FURTHER RESOLVED: that the Secretary/Treasurer of the Tribe shall temporarily discontinue the payment of any Tribal funds toward the compensation of James E. Billie for his Tribal Council employment or any other service performed for the Tribe; and

BE IT FURTHER RESOLVED: that the Tribal Human Resources Department Director shall temporarily remove James E. Billie from any payroll of the Seminole Tribe of Florida and notify the Tribal Council of any attempt to circumvent such action; and

RE:   SUSPENSION OF JAMES E. BILLIE AS CHAIRMAN OF THE TRIBAL
      COUNCIL OF THE SEMINOLE TRIBE OF FLORIDA

(Resolution No. _____)

Page 4

BE IT FURTHER RESOLVED: that James E. Billie shall not be employed by or render services to the Seminole Tribe of Florida during the term of his suspension; and

BE IT FURTHER RESOLVED:  that this resolution is hereby adopted after motion made by _____, seconded by _____ and a roll call vote as follows:

        Chairman James E. Billie...............................
        Vice-Chairman Mitchell Cypress..............................
        Council Representative David R. Cypress............
        Council Representative Jack Smith, Jr.................
        Council Representative Max B. Osceola, Jr.............

DONE THIS _____ day of _____, 2001, at the regular meeting of the Tribal Council of the Seminole Tribe of Florida duly convened at Hollywood, Florida, with a quorum being present by a vote of _____ for, _____ against, with _____ abstentions.


                                        _____
                                        Acting Chairman
                                        TRIBAL COUNCIL

ATTEST:


_____
Secretary/Treasurer
TRIBAL COUNCIL

RE:    SUSPENSION OF JAMES E. BILLIE AS CHAIRMAN OF THE TRIBAL
       COUNCIL OF THE SEMINOLE TRIBE OF FLORIDA

(Resolution No. _____)

Page 5

tcrsjebcstof5-22-01

**AMENDED**

CONSTITUTION AND BYLAWS

SEMINOLE TRIBE OF FLORIDA

B

CURRENT ISSUE
FY 1978

AMENDED CONSTITUTION & BYLAWS
SEMINOLE TRIBE OF FLORIDA

I N D E X

CONSTITUTION

Page   Article / Subject

  1              Preamble

  1      I.    Territory

  1      II.   Membership
                  Section  1.  Enrolled members
                           2.  Census requirement
                           3.  Blood quantam - both parents enrolled
                           4.    "      "    - one parent enrolled
  2                        5.    "      "    - born out of wedlock,
                                                 mother enrolled
                           6.    "      "    - born out of wedlock,
                                                 mother not enrolled,
                                                 proof of paternity,
                                                 father enrolled.
                           7.  Minor applicant
                           8.  Membership ordinances
                           9.  Elective office - membership requirements

  2      III.  Organization of Governing Body
                  Section  1.  Tribal Council members - voting rights
                           2.    "      "    - composition
                           3.  Age qualification - candidacy
  3                        4.  Appointments - committees

  3      IV.   Nominations and Elections
                  Section  1.  First election - voting eligibility
                           2.  Voting registration - resident and
                                                 non-resident voting
                           3.  Terms of office & meeting attendance
                                                 requirements
                           4.  Removal from office
  4                        5.  Filling vacancies - special elections
                           6.  Announcement of candidacy
                           7.  Elections by rules & regulations

  4      V.    Powers of Tribal Council
  5               Section  1.  Negotiate, advise, consult
                           2.  Employ legal counsel
                           3.  Manage, lease tribal lands & communal
                                                 resources
                           4.  Advise with Secy. of the Interior on
                                                 appropriations
                           5.  Administer & expend funds
                           6.  Make & enforce ordinances

INDEX - CONSTITUT:   BYLAWS
n. 2 - cont'd

CONSTITUTION, cont'd

| 5  | V.    | Section | 7.  | Promote social advancement of members |
|    |       |         | 8.  | Adopt resolutions |
|    |       |         | 9.  | Authority delegation limits and recognition of other organizations |
| 6  |       |         | 10. | Deposit of tribal funds |
| 6  | VI.   | Manner of Review | | |
|    |       | Section | 1.  | Resolutions, ordinances subject to review by Superintendent in 10 days by Secy. of Interior in 90 days |
|    |       |         | 2.  | Effective upon approval |
| 7  | VII.  | Amendments | | |
| 7  | VIII. | Referendum | | |
| 7  | IX.   | Bill of Rights | | |

BYLAWS

| 8  | I.    | Duties of Officers | | |
|    |       | Section | 1. | Chairman |
|    |       |         | 2. | Vice-Chairman |
|    |       |         | 3. | Secretary |
|    |       |         | 4. | Treasurer |
| 9  |       |         | 5. | Council Representatives |
| 9  | II.   | Oath of Office | | |
| 9  | III.  | Salaries and Remunerations | | |
| 9  | IV.   | Ordinances and Resolutions | | |
|    |       | Section | 1. | Ordinances |
|    |       |         | 2. | Resolutions |
| 9  | V.    | Meetings | | |
|    |       | Section | 1. | Regular and Special |
|    |       |         | 2. | Quorum |
| 10 | VI.   | Order of Business | | |
| 10 | VII.  | Ratification | | |
|    |       | Approval | | |

Includes
Amendments
I thru XVI

AMENDED
CONSTITUTION AND BYLAWS
of the
SEMINOLE TRIBE OF FLORIDA

PREAMBLE

We, the members of the Seminole Tribe of Florida, seeking divine guidance under
God, in order to promote justice, insure tranquility, encourage the general
welfare, safeguard our interests and secure the blessings of freedom and liberty
for ourselves and for our posterity, do hereby form and organize a Seminole
Tribal Council and we do ordain and establish this Constitution and set of Bylaws
as the rules for its deliberation.  (Amend. I)

ARTICLE I - TERRITORY

The jurisdiction of the Seminole Tribe of Florida shall include all lands within
the Hollywood, Big Cypress, and Brighton Reservations, the title to which is
held by the United States in trust for the Seminole Tribe of Florida, or by the
United States in trust for the Seminole Indians of Florida, lands held under
Executive Order No. 1379, dated June 28, 1911, and such other lands as may here-
after be acquired for the use and benefit of the Seminole Tribe of Florida.
(Amendment XII)

ARTICLE II - MEMBERSHIP

Section 1.  All persons who are enrolled as members of the Seminole Tribe of
Florida as of the date this amendment is adopted by vote of the adult members
of the Tribe.

Section 2.  Any person of Seminole Indian blood whose name appears on the Census
Roll of the Seminole Agency of January 1, 1957, may be enrolled upon written
application if admitted to membership by a majority vote of the Tribal Council,
provided that the Census Roll of January 1, 1957, may be corrected by the Seminole
Tribal Council up to and including August 22, 1970.  (Amend. XIII)

Section 3.  Any person of one-fourth (1/4) or more degree of Seminole Indian
blood born after the adoption of this amendment both of whose parents are
members of the Tribe, shall be enrolled as a tribal member upon written appli-
cation to the Tribal Council.

Section 4.  Any person of one-fourth (1/4) or more degree of Seminole Indian
blood born after the adoption of this amendment of a marriage between a member
of the Tribe and any other person may be enrolled if admitted to membership by
a majority vote of the Tribal Council.

Section 5. A child of one-fourth (1/4) or more degree of Seminole Indian blood, born out of wedlock after the adoption of this amendment, to a Seminole mother who is a member of the Tribe, may be enrolled by a majority vote of the Tribal Council if the child otherwise meets the requirements for enrollment.

Section 6. A child of one-fourth (1/4) or more degree of Seminole Indian blood born out of wedlock, to a mother who is not a member of the Tribe and is not eligible to become a member, may be enrolled by a majority vote of the Tribal Council if the mother files with the Tribal Council proof established in accordance with the laws of the State of Florida as to the paternity of the child, and the person adjudged to be the father is an enrolled member of the Tribe, and if the child otherwise meets the requirements for enrollment.

Section 7. In the event the applicant is a minor, the application may be pre-pared and presented by the parent or parents of the minor, or by any adult relative.

Section 8. The Tribal Council shall have the power to pass ordinances, which are not in conflict with this Constitution, governing future membership, loss of membership and the adoption of members into the Seminole Tribe of Florida, which ordinances shall be subject to the approval of the Secretary of the Interior, or his authorized representative. (Amendment XIII)

Section 9. No person who is admitted to tribal membership by adoption shall be eligible to hold an elective office in the Seminole Tribe of Florida. (Amendments II and V)

ARTICLE III - ORGANIZATION OF GOVERNING BODY

Section 1. The governing body of the Seminole Tribe of Florida shall be known as the Tribal Council and shall consist of five (5) members, each of whom shall have voting rights.

Section 2. The Tribal Council shall consist of a Chairman elected at-large and councilmen elected from and exclusively by the residents of each of the following Seminole Reservations: Hollywood, Big Cypress, and Brighton. The President of the Board of Directors, elected in accordance with the provisions set forth in the Charter of the Seminole Tribe of Florida, Inc. shall meet with and serve as Vice-Chairman of the Tribal Council during his term of office. (Amendment XII)

Section 3. Any member of the Tribe having reached the age of 21, and who has been in residence on Hollywood, Brighton, or Big Cypress Reservation for a con-tinuous period of four years immediately prior to an election, shall be quali-fied to be a candidate for election to the Council. (Amendment XII)

2

Section 4. The Tribal Council shall select from within or without the member-ship of the tribe a Secretary-Treasurer and such committees as may be deemed necessary. Committeemen so selected shall serve at the pleasure of the Tribal Council. All officers and employees appointed or employed by the Tribal Council now serving or hereafter are appointed or employed in permanent posi-tions and shall serve unless removed or their services terminated for ineffi-ciency, gross misconduct, neglect of duty, or for good and sufficient reasons as may hereafter be prescribed by the Tribal Council. (Amend. VI & XIV)

### ARTICLE IV – NOMINATIONS AND ELECTIONS

Section 1(a). The first election of representatives to the Tribal Council under this amended Constitution shall be held within thirty (30) days following the adoption and approval of the amendments and shall be under the supervision of the incumbent Tribal Council and the Superintendent of the Seminole Agency.

(b) Any person who has reached his twenty-first (21) year thirty (30) days prior to an election who is a member of the Seminole Tribe of Florida shall be eligible to vote in any election of the Seminole Tribe except in those elections where voting requirements may be otherwise prescribed by Federal law.

Section 2. In any election of the Seminole Tribe, resident voters shall register with the reservation of their domicile. Where this Constitution provides for election of councilmen from a particular reservation, only voters residing on that reservation shall be eligible to participate in the election of such repre-sentatives. Non-resident voters shall vote only for at-large candidates.

Section 3. The successful candidates in elections to the Tribal Council shall hold office as follows:

(a) The candidate from each reservation receiving the largest number of votes shall hold office for two (2) years.

(b) The candidate for Chairman elected at-large who receives the largest number of votes shall hold office for four (4) years.

(c) Successful candidates shall take office on the first Monday in the month immediately following their election. (Amend. XV)

(d) If a member of the Tribal Council fails or refuses to attend two regular meetings in succession, unless excused due to illness or other causes for which he cannot be held responsible, his office shall be declared forfeited by a reso-lution of the Tribal Council, and a special election called by the Tribal Council shall be held to replace him according to Section 5 of this Article.

Section 4. The Tribal Council may by an affirmative vote of four-fifths (4/5) of its total membership remove any tribal official or member of the Tribal Council from office who fails to carry out his duties or his Tribal Council reponsibili-ties, or is found guilty of a misdemeanor involving moral turpitude or a felony in any county, State or Federal Court, or for gross neglect of duty or misconduct reflecting on the dignity and integrity of the Tribal Council. Each reservation, by petition signed by twenty percent (20%) of the eligible voters thereon, may

3

request the recall of such reservation's representative by the Tribal Council.
Request for the recall of the Council Chairman shall be by petition signed by
twenty percent (20%) of the number of voters who participated in this election.

Before any vote of recall or removal is taken, the member or official shall be
given a written statement of all charges filed against him at least ten (10)
days before the meeting of the Tribal Council before which he is to appear and
he shall be given an opportunity to answer any and all written charges at such
meeting. The decision of the Tribal Council shall be final.

Section 5. If a councilman should die, resign, or permanently leave the reser-
vation he represents, or be removed from office for cause, the Council shall
declare the office vacant and within thirty (30) days an election shall be held
on the relevant reservation to fill the vacancy for the unexpired term: Provided,
a regularly scheduled election is not to be held within sixty (60) days. In the
event that the Chairmanship should become vacant, the office will not be filled
by the Vice-Chairman, but the Council shall call an election-at-large within a
period of thirty (30) days to select a new Chairman to serve until his predecessor's
term has expired: Provided, a regularly scheduled election is not to be held
within sixty (60) days.

Section 6. Any qualified member of the Seminole Tribe of Florida may announce
his or her candidacy for the Tribal Council, such announcement to be in writing
and supported by a petition signed by ten (10) eligible voters from the reserva-
tion on which he or she resides. In the case of an at-large candidate, his
announcement must also be in writing and supported by a petition signed by ten
(10) eligible voters of each reservation. Any petition submitted in support of
a candidate shall be considered invalid when and if a signer has signed a petition
supporting any other candidate for the same office. All announcements shall be
presented to the Secretary of the Tribal Council at least twenty (20) days prior
to the date of election. It shall be the duty of the Secretary of the Tribal
Council to post in at least one public place on each reservation and publish at
least once in a newspaper of general circulation at least fifteen (15) days
before the election the names of the candidates for Tribal Council. No candidate
shall be permitted to seek and/or hold more than one elected office at any
given period.

Section 7. All elections shall be by secret ballot and shall be held in accor-
dance with the rules and regulations prescribed by the Tribal Council, subject
to the review of the Secretary of the Interior, or his authorized representa-
tive. In the event that the Tribal Council does not call an election as herein
provided, the Secretary of the Interior, within sixty (60) days after the regular
election date, may call such an election. (Amend. III and VII)


ARTICLE V - POWERS OF TRIBAL COUNCIL

In addition to all powers vested in the Seminole Tribal Council by existing law,
the Tribal Council of the Seminole Tribe of Florida shall exercise the following
powers, subject to any limitation imposed by the Constitution or the Statutes of
the United States, and subject further to all expressed restriction upon such
powers contained in this Constitution and Bylaws.

Section 1.  To negotiate with the Federal, State and local governments and others on behalf of the tribe and to advise and consult with the representatives of the Department of the Interior on all activities of the Department which may affect the Seminole Tribe of Florida, excepting those tribal affairs which may hereafter be specifically delegated under the provisions of the Charter of the Seminole Tribe.

Section 2.  To employ legal counsel for the protection of the rights of the Tribe and its members, the choice of counsel and fixing of fees to be subject to the approval of the Secretary of the Interior, or his authorized representative.

Section 3.  To manage and lease or otherwise deal with tribal lands and communal resources in accordance with law and to prevent the sale, disposition, lease or encumbrance of tribal lands, interest in lands, or other tribal assets without the consent of the Tribe.

Section 4.  To advise with the Secretary of the Interior, or his authorized representative, with regard to all appropriation estimates or Federal projects for the benefit of the Seminole Indians of Florida prior to the submission of such estimates to the Bureau of the Budget and the Congress.

Section 5.(a)  To administer any funds within the control of the Tribe; to make expenditures from available funds for Tribal purposes, including salaries and expenses of tribal officials or employees; subject, however, to the condition that this authority shall not extend over the responsibilities and authorities specifically delegated to the Board of Directors by the Charter of the Tribe. All expenditures of tribal funds under control of the Tribal Council shall be by resolution duly approved by a majority of the Tribal Council in legal session and the amounts so expended shall be a matter of public record at all times.

(b)  The Tribal Council, subject to the approval of the Secretary of the Interior, or his authorized representative, shall prepare annual budget requests for the advancement to the control of the Tribe such money as is now or may hereafter be deposited to the credit of the Tribe in the United States Treasury or which may hereafter be appropriated for the use of the Tribe.

Section 6.  To make and enforce ordinances, subject to the review of the Secretary of the Interior, or his authorized representative, covering the tribe's right to levy taxes and license fees on persons or organizations doing business on the reservation.

Section 7.  To promote public health, education, charity, and such other services as may contribute to the social advancement of the members of the Seminole Tribe of Florida.

Section 8.  To adopt resolutions regulating the procedures of the Seminole Tribal Council, its officials and committees in the conduct of tribal affairs.

Section 9.(a)  No authorities contained in this Constitution may be delegated by the Seminole Tribal Council to tribal officials, district councils, or associations to carry out any function for which the Tribal Council assumes

primary responsibility, except by ordinance or resolution duly enacted by the Tribal Council in legal session, and excepting also those specific requirements contained in the Bylaws of the Seminole Tribe of Florida.

(b)  The Seminole Tribal Council is hereby authorized to recognize any district committees, associations or other organization open to the members of the Seminole Tribe of Florida and to approve such organizations, subject, however, to the provision that no such committee, association or organization may assume authorities specifically granted to the Seminole Tribal Council unless by a proper delegation of authority by the Seminole Tribal Council.

Section 10.  To deposit to the credit of the Seminole Tribe of Florida tribal funds, without limitation on the amount in any account, in any National or State bank whose deposits are insured by an agency of the Federal Government; provided, that funds advanced to the Tribe from funds held in trust in the United States Treasury shall be deposited with a bonded disbursing officer of the United States whenever the conditions prescribed by the Secretary of the Interior, or his authorized representative in connection with such advance require that the advance be so deposited.

## ARTICLE VI – MANNER OF REVIEW

Section 1.  Any resolution or ordinance which by the terms of this Constitution and Bylaws is subject to review by the Secretary of the Interior, or his authorized representative, shall be presented to the Superintendent of the reservation within ten (10) days of its enactment.  The Superintendent shall within ten (10) days after its receipt approve or disapprove the same.

If the Superintendent shall approve any ordinance or resolution, it shall thereupon become effective, but the Superintendent shall transmit a copy of the same, bearing his endorsement, to the Secretary of the Interior, who may within ninety (90) days from the date of enactment rescind the said ordinance or resolution for any cause, by notifying the Tribal Council of such decision.

If the Superintendent shall refuse to approve any ordinance or resolution submitted to him, within ten (10) days after its receipt he shall advise the Tribal Council of his reasons therefor.  If the reasons appear to the Tribal Council to be insufficient it may, by a majority vote, refer the ordinance or resolution to the Secretary of the Interior who may within ninety (90) days from the date of enactment of the resolution of referral, approve or disapprove same in writing, provided however no such ordinance shall become effective until approved by the Secretary of the Interior or his duly authorized representative.

Section 2.  Any resolution or ordinance by the terms of this Constitution and Bylaws that is subject to the approval of the Secretary of the Interior, or his authorized representative, shall be presented to the Superintendent who shall transmit the same to the Secretary with his recommendations as to the merits of the proposals.

The said ordinance or resolution shall not become effective until it shall have been approved by the Secretary of the Interior, or his duly authorized representative.

6

## ARTICLE VII – AMENDMENTS

Whenever the Tribal Council by a majority vote of the members, or the tribal membership by a petition signed by twenty (20) percent of the eligible voters, calls for the submission of an amendment, the Secretary of the Interior shall call an election upon the proposed amendment to the Constitution and Bylaws. If at such election the amendment is adopted by a majority vote of the qualified voters of the Tribe voting therein, and if at least thirty (30) percent of those entitled to vote shall vote, such amendment shall be submitted to the Secretary of the Interior and, if approved by him, shall thereupon take effect. (Amend. IV)

## ARTICLE VIII – REFERENDUM

Section 1. Upon receipt of a petition signed by twenty (20) percent of the eligible voters, or by an affirmative vote of a majority of the Tribal Council members, any enacted or proposed ordinance or resolution of the Tribal Council shall be submitted to a referendum of the eligible voters of the Tribe. The majority of the votes cast in such referendum shall be conclusive and binding on the Tribal Council. The Tribal Council shall call such referendum within thirty (30) days and prescribe the manner of conducting the vote. (Added by Amendment VIII).

## ARTICLE IX – BILL OF RIGHTS

Section 1. All members of the Seminole Tribe shall be accorded equal political rights and equal opportunities to participate in the economic resources and activities of the Tribe, and no person shall be denied freedom of conscience, speech, association or assembly, or due process of law, or the right to petition for the redress of grievances. The members of the Tribe shall continue undisturbed in their religious beliefs and nothing in this Constitution and Bylaws will authorize the Tribal Council to interfere with these traditional religious practices according to their custom. (Added by Amendment IX).

BYLAWS OF THE SEMINOLE TRIBE OF FLORIDA

ARTICLE I - DUTIES OF OFFICERS

**Section 1.**  The Chairman of the Tribal Council shall preside over all meetings of the Council and exercise any authority specifically delegated to him as provided in Article V, Section 9 of the Constitution.  The Chairman shall participate in the meetings of the Board of Directors as Vice-President of that body.  He shall have full power to vote in both Tribal Council meetings and those of the Board of Directors.  An Acting Chairman shall be appointed by the members of the Tribal Council from among those elected members present when circumstances compel the Chairman to absent himself from any meeting. (Amendment X).

**Section 2.**  The Vice-Chairman shall assist the Chairman when called on to do so.  Voting power shall be vested in him.  In the absence of the Secretary, the Vice-Chairman shall assume all the duties and responsibilities of the Secretary. (Amendment X).

**Section 3.**  The Secretary shall cause to be prepared all minutes, resolutions and ordinances enacted at all meetings and forward copies, in every instance, to the Superintendent.  In addition to the duties prescribed pursuant to Article V, Section 8, the Secretary shall maintain all files, records, and correspondence of the Tribal Council in an orderly manner for the convenience of the Tribal Council and exercise such other duties as may be specifically delegated to him.

**Section 4.(a)**  The tribal Treasurer shall accept, receive, receipt for, preserve and safeguard all funds in the custody of the Tribe from whatever source.  He shall deposit all funds in such bank, or elsewhere as directed by the Tribal Council in accordance with Article V, Section 10 and shall cause to be made and preserved a faithful record of such funds and shall report on all receipts and expenditures and the amount and nature of all funds in his possession or custody, such report to be made in writing and filed with the Secretary at each regular meeting of the Tribal Council and at such other times as requested by the Tribal Council.

(b)  He shall not pay out or otherwise disburse any funds in his possession or custody, or in the possession or custody of the Tribal Council, except when properly authorized to do so by a duly enacted resolution.

(c)  The books and records of the tribal Treasurer shall be audited at least once every year by a competent auditor employed by the Council and at such other time as the Council or the Commissioner of Indian Affairs or his authorized representative may direct.  In addition to the copies prepared for the governing body, one copy of the audit shall be prepared for the Superintendent, one copy for the Area Director and one copy for the Commissioner of Indian Affairs.

(d)  The tribal Treasurer shall be required to give a bond satisfactory to the Tribal Council and the Commissioner of Indian Affairs, or his authorized representative, and make such provisions for carrying out the Tribal Council directives in the manner and method for custody and disbursement of funds as shall guarantee their safety, proper disbursement and use.

8

Section 5. The Council representatives shall serve as Chairman of the Committees on their respective reservations and committee meetings shall be held on the reservation each represents. No more than two people shall serve with him on each of his committees and they shall be members of the Tribe residing on that particular reservation. (Added by Amendment X).

## ARTICLE II - OATH OF OFFICE

Section 1. All duly elected members of the Tribal Council who have been certified shall be installed as provided in Article III, Section 3, upon subscribing to the following oath to be administered by the Superintendent.

"I, _____, do solemnly swear that I will support and defend the Constitution of the United States against all enemies; that I will faithfully and impartially carry out the duties of my office to the best of my ability; that I will cooperate, promote, and protect the best interest of the Tribe, in accordance with the Constitution and Bylaws of the Seminole Tribe of Florida."

## ARTICLE III - SALARIES AND REMUNERATIONS

Section 1. The Tribal Council may prescribe such salaries and remunerations pursuant to the provision of Article V, Section 5, as may be available and necessary to carry on its responsibilities and the responsibilities of its officials and employees.

## ARTICLE IV - ORDINANCES AND RESOLUTIONS

Section 1. All final decisions of the Tribal Council on matters of general and permanent interest to members of the Tribe and to tribal administration shall be embodied in ordinances. Each ordinance shall be numbered consecutively beginning with Number 1. Such enactments shall be available for public inspection.

Section 2. All final decisions of the Tribal Council on matters of temporary interest or relating to particular individuals, officials or committees shall be embodied in resolutions. Such resolutions shall be numbered consecutively beginning with Number 1 and shall also be subject to public inspection.

## ARTICLE V - MEETINGS

Section 1. The regular meetings of the Tribal Council shall be held bimonthly, the first to be held within thirty (30) days of the election of the Council. The Council may decide on the day and time for Regular Meetings. Special Meetings may be called by the Chairman or by three (3) members of the Council. The Secretary shall give advance written notice, as prescribed by the Council, of all meetings, such notices shall include date, time, place and purpose of the meeting.

Section 2. A quorum shall consist of three (3) members and no official action shall be transacted in the absence of a quorum at any time. (Amendment XI).

9

## ARTICLE VI - ORDER OF BUSINESS

**Section 1.** The Tribal Council shall determine the order of business. The Chairman and the Secretary-Treasurer shall prepare an agenda for both Regular and Special Meetings for the consideration of the Tribal Council which shall include, subject to change by the Council:

    (a)  Call to order and roll call
    (b)  Reading of minutes of last meeting
    (c)  Unfinished business
    (d)  Reports
    (e)  New business
    (f)  Adjournment

(Amendment XVI)

## ARTICLE VII - RATIFICATION

This Constitution and Bylaws, when approved by the Secretary of the Interior, shall be effective from and after the date of its ratification by a majority vote of adult Indians of the Seminole Tribe of Florida voting at an election called for that purpose by the Secretary of the Interior;  Provided, that at least 30 percent of those entitled to vote shall vote in such an election.

For the purpose of this election any adult 21 years of age and over, whose name appears on the Census Roll of the Seminole Agency of January 1, 1957, shall be eligible to vote.  A voting list of such eligible persons shall be prepared by the Constitutional Committee and the Superintendent.

## APPROVAL

I, Roger Ernst, Assistant Secretary of the Interior of the United States of America, by virtue of the authority granted me by the Act of June 18, 1934 (48 Stat. 984), as amended by the Act of June 15, 1935 (49 Stat. 378), do hereby approve the attached Constitution and Bylaws of the Seminole Tribe of Florida, subject to ratification by the Tribe in the manner therein provided.

Upon ratification of this Constitution and Bylaws, all rules and regulations heretofore promulgated by the Interior Department or by the Bureau of Indian Affairs, so far as they may be incompatible with any of the provisions of the said Constitution and Bylaws, are declared inapplicable to the Seminole Tribe of Florida.

All officers and employees of the Interior Department are ordered to abide by the provisions of the said Constitution and Bylaws.

Approval recommended:

(sgd) Glenn L. Emmons
Commissioner of Indian Affairs

                                        Roger Ernst
                           ASSISTANT SECRETARY OF THE INTERIOR
                                         (SEAL)

Washington, D. C.  July 11, 1957

## CERTIFICATE OF RATIFICATION

Pursuant to Section 16 of the Act of June 18, 1934 (48 Stat. 984), as amended by the Act of June 15, 1935 (49 Stat. 378), the attached Constitution and Bylaws approved on July 11, 1957, by Roger Ernst, Assistant Secretary of the Interior was submitted for ratification to the adult Indians of the Seminole Tribe of Florida and was on August 21, 1957, ratified by a vote of 241 for, and 5 against, in an election in which at least 30 percent of those entitled to vote cast their ballots.

(sgd) Bill Osceola
Chairman, Constitutional Committee

(sgd) Mike Osceola
Secretary, Constitutional Committee

(sgd) K. A. Marmon
Superintendent, Seminole Agency

11

# EXHIBIT

# D

RE:  **APPROVAL OF NOTIFICATION TO JAMES E. BILLIE RELATIVE TO CHARGES WHICH WARRANT HIS REMOVAL AS CHAIRMAN OF THE TRIBAL COUNCIL OF THE SEMINOLE TRIBE OF FLORIDA**

**SEMINOLE TRIBE OF FLORIDA**
**HOLLYWOOD, FLORIDA**

**RESOLUTION NO. C-76-03**

**WHEREAS,** the Seminole Tribe of Florida is an organized Indian tribe as defined in Section 16 of the Act of June 18, 1934, as amended; and

**WHEREAS,** the Seminole Tribe of Florida is a sovereign Indian tribe recognized and designated as such pursuant to the Act and as a part of its separate sovereign status, the Seminole Tribe of Florida is governed, in part, by the Amended Constitution and Bylaws of the Seminole Tribe of Florida, as well as by ordinances and resolutions duly enacted by the Tribal Council of the Seminole Tribe of Florida sitting in legal session; and

**WHEREAS,** the Seminole Tribe of Florida is and has always been, since its formal organization under the *Indian Reorganization Act of* 1934, as amended, a constitutional government dependent upon the collective wisdom of a constitutionally constituted elected Tribal Council as its governing body; and

**WHEREAS,** Article IV, Section 4 of the Amended Constitution and Bylaws of the Seminole Tribe of Florida requires, among other things, that Tribal Officials and members of the Tribal Council refrain from conduct which constitutes gross neglect of duty or misconduct reflecting on the dignity and integrity of the Tribal Council, as the constitutionally ordained body of the Seminole Tribe of Florida; and

**WHEREAS,** James E. Billie took an oath as prescribed by Article II of the Amended Bylaws of the Seminole Tribe of Florida to cooperate, promote and protect the best interests of the Tribe in accordance with the Amended Constitution and Bylaws of the Seminole Tribe of Florida; and

**WHEREAS,** the Tribal Council of the Seminole Tribe of Florida has become aware that James E. Billie has engaged in multiple acts of misconduct which are outlined on a Statement of Charges that is attached hereto and made a part hereof herein by reference which reflects his rejection of a constitutional government and reflects multiple instances in which James E. Billie lied, deceived and misrepresented crucial information to the Tribal Council and to the Tribal membership regarding numerous matters, as more particularly set forth

RE:  APPROVAL OF NOTIFICATION TO JAMES E. BILLIE RELATIVE TO CHARGES WHICH WARRANT HIS REMOVAL AS CHAIRMAN OF THE TRIBAL COUNCIL OF THE SEMINOLE TRIBE OF FLORIDA

RESOLUTION NO. C-76-03

Page 2

**WHEREAS,** Article V, Section 12, imposes upon the Tribal Council the non-delegable duty to promote and protect the peace, safety, health and general welfare of the Tribe and its members; and

**WHEREAS,** pursuant to Article IV, Section 4 of the Amended Constitution of the Seminole Tribe of Florida, the Tribal Council may, by an affirmative vote of 4/5 of its total membership, remove James E. Billie from elected office as Chairman of the Tribal Council of the Seminole Tribe of Florida based upon failure to carry out his duties or his Tribal Council responsibilities, or for gross neglect of duty or misconduct reflecting on the dignity and integrity of the Tribal Council; and

**WHEREAS,** the Tribal Council has determined that it is in the best interest of the Seminole Tribe and its members that James E. Billie be given notice, effective immediately, that charges of acts of misconduct and gross neglect have been brought against him upon which the Tribal Council intends to consider whether James E. Billie should be removed from office as Chairman of the Tribal Council; and

**WHEREAS,** pursuant to Article IV, Section 4, James E. Billie must be given at least 10 days notice before the meeting of the Tribal Council before which he is to appear so that he may be given an opportunity to answer any and all of the written charges contained on the Statement of Charges attached hereto, understanding that pursuant to Article IV, Section 4 of the Amended Constitution of the Seminole Tribe of Florida that any decision of the Tribal Council regarding removal will be final; and

**WHEREAS,** The Tribal Council is otherwise fully advised.

**NOW THEREFORE BE IT RESOLVED:** that pursuant to Article IV, Section 4, James E. Billie shall be served and notified at his last known address or wherever he can be located, or through whatever means are necessary to provide him with notice of the contents of this Resolution, including the charges contained in the Statement of Charges attached hereto and incorporated herein by reference, that the Tribal Council of the Seminole Tribe of Florida will meet and convene on Thursday, March 13, 2003 in order to hear and consider his answer to the charges attached to this Resolution following which the Tribal Council will take a vote in order to determine whether, on the basis of those charges, James E. Billie should be removed from office pursuant to Article IV, Section 4 of the Amended Constitution of the Seminole Tribe of Florida should four members of the Tribal Council vote in favor of such removal.

TIFICATION TO JAMES E. BILLIE RELATIVE TO
WARRANT HIS REMOVAL AS CHAIRMAN OF THE
F THE SEMINOLE TRIBE OF FLORIDA

ED: that this Resolution is hereby adopted after a motion made
d by Max B. Osceola, Jr., in a vote as follows:

n W. Huff, Sr... ... . . . . . . . . . . . . . . . . . . . Aye
ell Cypress . . . . . . . . . . . . . . . . . . . . . Aye
ve David R. Cypress. . . . . . . . . . . . . . . Aye
ve Max B. Osceola, Jr. . . . . . . . . . . . . . . Aye

February, 2003, at a special meeting of the Tribal Council, duly
orida, with a quorum being present, by a vote of 4 for, 0 against,

_____
Acting Chairman
TRIBAL COUNCIL

3

RE:   APPROVAL OF NOTIFICATION TO JAMES E. BILLIE RELATIVE TO
       CHARGES WHICH WARRANT HIS REMOVAL AS CHAIRMAN OF THE
       TRIBAL COUNCIL OF THE SEMINOLE TRIBE OF FLORIDA

**RESOLUTION NO. C-76-03**

Page 3

**BE IT FURTHER RESOLVED**: that this Resolution is hereby adopted after a motion made
by David R. Cypress, seconded by Max B. Osceola, Jr., in a vote as follows:

> Acting Chairman John W. Huff, Sr... ... . . . . . . . . . . . . . . . . . . . Aye
> Vice Chairman Mitchell Cypress . . . . . . . . . . . . . . . . . . . . . .  Aye
> Council Representative David R. Cypress. . . . . . . . . . . . . . . . .   Aye
> Council Representative Max B. Osceola, Jr. . . . . . . . . . . . . . .    Aye

DONE THIS the 27th day of February, 2003, at a special meeting of the Tribal Council, duly
convened at Hollywood, Florida, with a quorum being present, by a vote of 4 for, 0 against,
with 0 abstentions.

                                              _____
                                              Acting Chairman
                                              TRIBAL COUNCIL

ATTEST:

_____
Secretary/Treasurer
TRIBAL COUNCIL

## STATEMENT OF CHARGES TO RESOLUTION

BE IF OFFICIALLY KNOWN THAT:

On the 24th day of May 2001, the Tribal Council became aware of gross neglect of duty and misconduct by James E. Billie, as Chairman of the Tribal Council of the Seminole Tribe of Florida, which reflected on the dignity and integrity of the Tribal Council and the Seminole Tribe of Florida. Pursuant to **Section 4 of Article IV of the Tribal Constitution**, the Tribal Council could have elected to remove Mr. Billie from office. However, in the interests of justice and fairness, rather than permanently deprive Mr. Billie of his position at that time, the Tribal Council decided to suspend Mr. Billie until such time as a full investigation was completed.

After thorough investigation, the Tribal Council has charged that James E. Billie has acted with gross neglect of duty and misconduct reflecting on the dignity and integrity of the Tribal Council and the Seminole Tribe of Florida and therefore should be called upon to answer these charges before the Tribal Council. The Tribal Council charges that there is overwhelming evidence to conclude that James E. Billie violated his **oath of office** by failing to promote and protect the best interests of the Tribe in accordance with the Amended Constitution and By-laws of the Seminole Tribe of Florida. Specifically, the Tribal Council charges that:

1. James E. Billie lied, deceived, and misrepresented crucial information to the Tribal Council and to the members of the Tribe about the Tribe's investment account. The purpose of such lies and deceit were to justify Mr. Billie's action in moving the investment savings account from a safe account to a different account, which could then be controlled by Mr. Billie's friend and colleague, Timmy Wayne Cox. This conduct violates **Article IV, Section 4 of the Tribal Constitution**, which prohibits the gross neglect of duty or misconduct reflecting on the dignity and integrity of the Tribal Council. This conduct also resulted in losses of $20,260,272.62 to the

saying that the account was generating tens of millions of dollars of profits. Mr. Cox' army buddy, Peter Ripich, who was the broker on the account, made significant sums of money at the expense of the Tribe when Mr. Cox and the broker traded and day-traded over 100 Million Dollars of the Tribe's money in a period of less than one year.

2. In sworn testimony given under oath in the case of *United States of America v. Danny H. Wisher*, United States District Court, Southern District of Florida, James E. Billie testified on December 16, 2002 that he participated in and authorized the formation of companies outside of the United States for the purpose of establishing a secret, offshore and illegal internet gaming venture and concealed this from the Tribal Council. James E. Billie did this even after receiving prior legal advice that such action could potentially jeopardize the Seminole Tribe of Florida's existing gaming operations and the future of Tribal dividends. Mr. Billie's conduct in forming this secret offshore and illegal gaming venture and concealing it from the Tribal Council violated **Article IV, Section 4 of the Tribal Constitution** in that it constitutes misconduct on his part which reflects on the dignity and integrity of the Tribal Council. **It also constitutes a violation of his oath of office as well as Article V, Section III of the Amended Constitution and Bylaws of The Seminole Tribe of Florida.**

3. James E. Billie lied to the Tribal Council and to the members of the Tribe in a Hollywood Community Meeting on March 27, 2001, when he said that the Tribe had no financial investment in a hotel in Nicaragua when in fact, James E. Billie had authorized the expenditure of hundreds of thousand of dollars without Tribal Council or tribal membership knowledge. **This conduct constitutes a violation of Article IV, Section 4 of the Tribal Constitution, as well as a violation of the oath of office taken by James Billie as contained in Article II of the Tribal Bylaws.**

in this Charge is a violation of **Article IV, Section 4 of the Amended Constitution as well the oath of office contained in Article II of the Amended Bylaws of the Seminole Tribe of Florida.**

8.   James E. Billie disregarded and ignored the constitutional constraints placed upon him by the Seminole Tribe of Florida's Constitution and acted as if the tribal government were his kingdom or his dictatorship.  Under oath, in a federal trial, James E. Billie stated that he regarded the Tribe's investment account as his money to do with as he pleased.  He also admitted at the same trial that he authorized movement of Tribal funds from the safety of their investment accounts to offshore accounts.  Further, James E. Billie testified that it was his practice to spend this money without consulting with or advising any other members of the Tribal Council.  Mr. Billie also stated under oath that he felt totally justified in doing whatever business ventures he decided to do without advising the Tribal Council or the tribal membership.  The conduct contained in this Charge is a violation of **Article IV, Section 4 of the Tribal Constitution as well the oath of office prescribed in Article II of the Tribal Bylaws of the Seminole Tribe of Florida.  The conduct described also violates the powers of the Chairman as prescribed by Article I, Section 1 of the Tribal Bylaws of the Seminole Tribe of Florida.**

9.   Following the enactment of Tribal Resolution C-133-01 which suspended James E. Billie from his position as Chairman of the Tribal Council, James E. Billie defied the mandate of the Tribal Council and wrote to the federal government and to attorneys for the Tribe stating that he was the lawful ruler of the Tribe and to ignore the directives of the legitimate authority of the Tribal Council.  Contrary to Mr. Billie's belief, neither he nor any Tribal Council member nor any Tribal member is above the law.  Mr. Billie's actions, at the very least, are disruptive of the government of the Seminole Tribe of Florida, and, in the worse light, would be tantamount to

**Amended Constitution of the Seminole Tribe of Florida** which creates and defines the duties of the Tribal Council as the constitutionally constituted and ordained governing body of the Tribal Council of the Seminole Tribe of Florida.  Mr. Billie's unilateral actions are violative of multiple provisions of each of these Articles which contemplate government by the collective wisdom of a constitutionally constituted governing body.

RE:  **REMOVAL OF JAMES E. BILLIE AS TRIBAL COUNCIL CHAIRMAN OF THE SEMINOLE TRIBE OF FLORIDA**

**SEMINOLE TRIBE OF FLORIDA**
**HOLLYWOOD, FLORIDA**

**RESOLUTION NO. C-79-03**

**WHEREAS**, the Seminole Tribe of Florida is an organized Indian tribe as defined in Section 16 of the Act of June 18, 1934, as amended; and

**WHEREAS**, the Seminole Tribe of Florida is a sovereign Indian tribe recognized and designated as such pursuant to the Act and as a part of its separate sovereign status, the Seminole Tribe of Florida is governed, in part, by the Amended Constitution and Bylaws of the Seminole Tribe of Florida, as well as by ordinances and resolutions duly enacted by the Tribal Council of the Seminole Tribe of Florida sitting in legal session; and

**WHEREAS**, the Seminole Tribe of Florida is and has always been, since its formal organization under the *Indian Reorganization Act of* 1934, as amended, a constitutional government dependent upon the collective wisdom of a constitutionally constituted elected Tribal Council as its governing body; and

**WHEREAS**, Article IV, Section 4 of the Amended Constitution and Bylaws of the Seminole Tribe of Florida requires, among other things, that Tribal Officials and members of the Tribal Council refrain from conduct which constitutes gross neglect of duty or misconduct reflecting on the dignity and integrity of the Tribal Council, as the constitutionally ordained body of the Seminole Tribe of Florida; and

**WHEREAS**, James E. Billie took an oath as prescribed by Article II of the Amended Bylaws of the Seminole Tribe of Florida to cooperate, promote and protect the best interests of the Tribe in accordance with the Amended Constitution and Bylaws of the Seminole Tribe of Florida; and

**WHEREAS**, on February 27, 2003 Tribal Council of the Seminole Tribe of Florida duly enacted Tribal Council Resolution No. C-76-03 which contained a Statement of Charges describing multiple acts of misconduct on the part of James E. Billie which indicated that James E. Billie lied, deceived, and misrepresented crucial information to the Tribal Council and to the Tribal membership regarding a number of matters, as more particularly set forth in the Statement of Charges attached to and made a part of Resolution No. C-76-03; and

**WHEREAS**, pursuant to Article IV, Section 4 of the Amended Constitution and Bylaws of the Seminole Tribe of Florida, James E. Billie was given at least ten days

RE: REMOVAL OF JAMES E. BILLIE AS TRIBAL COUNCIL CHAIRMAN OF THE SEMINOLE TRIBE OF FLORIDA

RESOLUTION NO. C-79-03

Page 2

notice of the Statement of Charges set forth in Tribal Resolution C-76-03, and was personally served with a copy of said Resolution which provided Mr. Billie with the opportunity to appear before the Tribal Council and to answer any and all of the written charges contained in the Statement of Charges attached to Tribal Council Resolution C-76-03; and

WHEREAS, Article V, Section 12, imposes upon the Tribal Council the non-delegable duty to promote and protect the peace, safety, health and general welfare of the Tribe and its members; and

WHEREAS, pursuant to Article IV, Section 4 of the Amended Constitution of the Seminole Tribe of Florida, the Tribal Council may, by an affirmative vote of 4/5 of its total membership of five, remove James E. Billie from elected office as Chairman of the Tribal Council of the Seminole Tribe of Florida based upon his failure to carry out his duties or his Tribal Council responsibilities, or for gross neglect of duty or misconduct reflecting on the dignity and integrity of the Tribal Council; and

WHEREAS, James E. Billie did appear before the Tribal Council at a Special Meeting open only to Tribal members of the Seminole Tribe of Florida on March 13, 2003, at which time Mr. Billie was given the opportunity to, and did, provide his answers to each of the written charges contained in the Statement of Charges attached to Tribal Resolution C-76-03; and

WHEREAS, at the time of his appearance to answer the Statement of Charges, James E. Billie admitted and acknowledged that he had received at least ten days prior notice as required by the Amended Constitution and Bylaws of the Seminole Tribe of Florida; and

WHEREAS, Mr. Billie further indicated and acknowledged that although backup documentation and evidence had been made available to him for his review at the Tribal Headquarters of the Seminole Tribe of Florida from March 6, 2003, through March 13, 2003, immediately prior to the Tribal Council meeting of March 13, 2003, he voluntarily chose not to review the documents and evidence supporting the charges against him; and

WHEREAS, no objection was made by James E. Billie relative to any matter pertaining to the substance or procedure of the removal proceedings, and no objection was made to the fact that the proceedings were conducted under circumstances wherein legal counsel was not present for either the Tribal Council of the Seminole Tribe of Florida or for James E. Billie; and

RE:  REMOVAL OF JAMES E. BILLIE AS TRIBAL COUNCIL CHAIRMAN OF THE SEMINOLE TRIBE OF FLORIDA

**RESOLUTION NO. C-79-03**

Page 3

**WHEREAS,** James E. Billie stated to the Tribal Council that he was prepared to accept and respect any findings made by the Tribal Council relative to the Statement of Charges attached to Tribal Council Resolution C-76-03, and his responsibility, or lack of responsibility, as to the charges made against him in the Statement of Charges; and

**WHEREAS,** the Tribal Council has heard and weighed all of the information available to it with respect to each of the charges against James E. Billie contained in the Statement of Charges attached to Resolution C-76-03, as well as the response to each charge presented by James E. Billie during his appearance before the Tribal Council on March 13, 2003; and

**WHEREAS,** James E. Billie, as to each charge, has admitted his participation in conduct which constitutes gross neglect of duty or misconduct reflecting on the dignity and integrity of the Tribal Council, as the constitutionally ordained body of the Seminole Tribe of Florida; and

**WHEREAS,** the Tribal Council has attached hereto the Findings of the Tribal Council with respect to the Statement of Charges Against James E. Billie As Set Forth in Resolution C-76-03 ("Findings"); and

**WHEREAS,** the Tribal Council has determined that James E. Billie has engaged in conduct that violates Article IV, Section 4 of the Amended Tribal Constitution, as well as the Oath of Office that James E. Billie took when he last became Chairman of the Tribal Council as prescribed by Article II of the Bylaws of the Seminole Tribe of Florida, and further finds that his conduct constitutes a violation of Article V, Section 3 the Amended Constitution and Bylaws of the Seminole Tribe of Florida, and that the conduct reflected in the Statement of Charges exceeded the powers of the Chairman as prescribed by Article I, Section 1 of the Tribal Bylaws of the Seminole Tribe of Florida; and

**WHEREAS,** by virtue of the admissions of James E. Billie as well as the evidence that the Tribal Council carefully weighed and considered, the Tribal Council finds that James E. Billie did in fact commit all of the acts contained in each of the nine (9) charges set forth in the Statement of Charges attached to and made a part of Tribal Resolution C-76-03; and

**WHEREAS,** pursuant to Article IV, Section 4, of the Amended Constitution of the Seminole Tribe of Florida the decision and determination of the Tribal Council regarding the removal of James E. Billie is final, conclusive and binding; and

**WHEREAS,** the Tribal Council of the Seminole Tribe of Florida is otherwise fully advised.

RE: REMOVAL OF JAMES E. BILLIE AS TRIBAL COUNCIL CHAIRMAN OF THE SEMINOLE TRIBE OF FLORIDA

RESOLUTION NO. C-79-03

Page 4

**NOW THEREFORE BE IT RESOLVED:** that pursuant to Article IV, Section 4 of the Amended Constitution and Bylaws, the Tribal Council finds by an affirmative vote of 4/5 of its total membership of five members that James E. Billie has failed to carry out his duties, as well as his Tribal Council responsibilities and has engaged in gross neglect of duty and misconduct reflecting on the dignity and the integrity of the Tribal Council as a result of his engaging in the conduct set forth in each of the charges contained in the Statement of Charges attached to and made a part of Resolution C-76-03; and

**BE IT FURTHER RESOLVED:** that for the reasons set forth in the Findings, which is attached hereto and incorporated herein, as to the Statement of Charges set forth and attached to Tribal Resolution C-76-03, the Tribal Council finds that James E. Billie did, in fact, commit all of the acts contained in each of the nine charges set forth therein and hereby removes him as Chairman of the Tribal Council of the Seminole Tribe of Florida, effective immediately; and

**BE IT FURTHER RESOLVED**: that this Resolution is hereby adopted after a motion made by David R. Cypress, seconded by John W. Huff, Sr. in a vote as follows:

Acting Chairman Max B. Osceola, Jr. . . . . . . . . . . . . . . . . . . . Aye
Vice-Chairman Mitchell Cypress . . . . . . . . . . . . . . . . . . . . . Aye
Council Representative David R. Cypress . . . . . . . . . . . . . . . . Aye
Council Representative John W. Huff, Sr. . . . . . . . . . . . . . . . . Aye

DONE THIS the 18th day of March, 2003, at a special meeting of the Tribal Council, duly convened at Hollywood, Florida, commencing on March 13, 2003, which was recessed and reconvened on March 18th, 2003, with a quorum being present, by a vote of 4 for, 0 against, with 0 abstentions.

Acting Chairman
TRIBAL COUNCIL

ATTEST:

Secretary/Treasurer
TRIBAL COUNCIL

2RemovalJEB3-13-03

# FINDINGS OF THE TRIBAL COUNCIL
## WITH RESPECT TO THE
## STATEMENT OF CHARGES AGAINST
## JAMES E. BILLIE AS CONTAINED
## IN TRIBAL COUNCIL RESOLUTION C-76-03

On March 13, 2003, the Tribal Council of the Seminole Tribe of Florida convened at a Special Meeting for the purpose of providing James E. Billie the opportunity to appear to answer charges set forth in the Statement of Charges set forth in Tribal Council Resolution C-76-03. Mr. Billie admitted receiving at least ten days prior notice of the charges, and expressed his appreciation to have the opportunity to appear before the Tribal Council to address them. No objections were made to the manner in which these constitutional proceedings were held, nor did Mr. Billie complain that any of his rights were violated.

Members of the Tribal Council recognize both the gravity and historical significance of this matter. Nevertheless, each member of the Tribal Council, in discharge of their constitutional duties, attended this meeting with an open mind, willing to listen to any explanation or answer that James E. Billie cared to give with regard to the charges made against him in Tribal Council Resolution C-76-03.

After hearing and considering all of the evidence, including Mr. Billie's answers to the charges, the Tribal Council, in fulfillment of the duties and responsibilities prescribed to it by the Amended Constitution and By-laws of the Seminole Tribe of Florida, hereby finds that James E. Billie did, in fact, commit each of the nine (9) charges set forth against him in Tribal Council Resolution C-76-03, and hereby removes him from office.

Our reasons for this important decision follow:

As to Charge #1, the Tribal Council finds that James E. Billie lied, deceived, and misrepresented crucial information to the Tribal Council and the members of the Tribe about the Tribe's investment account. The purpose of such lies and deceit were to justify Mr. Billie's action in moving the investment savings account from a safe account to a different account, which could then be controlled by Mr. Billie's friend and colleague, Timmy Wayne Cox. This conduct resulted in losses of $20,260,272.62 to the Tribe and its members. James E. Billie lied to Tribal members, violating his Oath of Office, saying that the account was generating millions of dollars in profits. Mr. Cox's long time personal friend, Peter Ripich, who was the broker on the account, made significant sums of money at the expense of the Tribe when Mr. Cox traded and day-traded over $100,000,000 of the Tribe's money in a period of less than one year – facts which Mr. Billie did not deny. During his oral in-person response, Mr. Billie stated that he did not intend to steal any money from the Tribe, but felt that the account needed to be moved, and gave the approval for its movement. No Tribal Council approval was ever obtained, and Mr. Billie, as the Tribe's Chairman, must take responsibility for his wrongful acts.

The Tribal Council finds that the conduct of James E. Billie, with regard to the charges contained in Charge #1, violates Article IV, Section 4 of the Tribal Constitution, which prohibits the gross neglect of duty or misconduct reflecting on the dignity and integrity of Tribal Council of the Seminole Tribe of Florida, thereby warranting his removal from office.

As to Charge #2, the Tribal Council finds that James E. Billie participated in the unauthorized formation of companies outside the United States for the purpose of establishing an internet gaming venture, and purposely concealed the same from the Tribal Council and Tribal members.  Mr. Billie admitted to the above, as well as improperly delegating authority to others, without the appropriate Tribal Council resolution, to operate the internet gaming venture.  This action, without the knowledge and consent of the rest of the Tribal Council, had the potential of jeopardizing the Seminole Tribe of Florida's existing gaming, the future of dividends and the economic health and welfare of the Seminole Tribe of Florida and its members.  The Tribal Council finds that the conduct of James E. Billie, with regard to the charges contained in Charge #2, violates Article IV, Section 4 of the Tribal Constitution in that it constitutes gross neglect of duty and misconduct reflecting on the dignity and integrity of the Tribal Council of the Seminole Tribe of Florida, thereby warranting his removal from office.

As to Charge #3, the Tribal Council finds, and James E. Billie admits, that James E. Billie lied to the Tribal Council and members of the Seminole Tribe when he falsely advised that the Seminole Tribe had no financial investment in a hotel in Nicaragua, whereas in actuality, James E. Billie authorized the expenditure of Tribal funds of substantially more than $250,000.00 for the hotel.  James E. Billie did not deny this.  This conduct constitutes a violation of Article IV, Section 4 of the Tribal Constitution, as well as a violation of the Oath of Office last taken by James E. Billie, as set forth and required by Article II of the Tribal By-laws, thereby warranting his removal from office.

As to Charge #4, the Tribal Council finds that James E. Billie participated in the creation of falsified documents to justify the illegal expenditure of Tribal funds. James E. Billie did not deny this.  More particularly, the Tribal Council finds that James E. Billie testified, under oath, in a Federal criminal proceeding, on December 16, 2002, wherein he specifically admitted to authorizing Timmy Wayne Cox to create and backdate invoices so as to attempt to justify the expenditure of Tribal funds.  The Tribal Council finds that this conduct violates Article I, Section 1 of the Amended By-laws of the Seminole Tribe, thereby warranting his removal from office.

As to Charge #5, the Tribal Council finds that James E. Billie lied to and deceived Tribal members and the Tribal Council by conspiring with Timmy Cox to destroy authentic Tribal records in order to justify improper payments to a Tribal employee.  In his oral in-person response, James E. Billie stated that he did authorize Timmy Cox to make up papers in order to ensure that Christine O'Donnell would be paid money to which she was not lawfully entitled.  James E. Billie did not deny this.  The conduct contained in this charge reflects a violation of Article IV, Section 4 of the Amended

Constitution of the Seminole Tribe as well as the Oath of Office prescribed by Article II of the Amended By-laws of the Seminole Tribe of Florida, thereby warranting his removal from office.

As to Charge #6, the Tribal Council finds, and James E. Billie does not deny, that James E. Billie illegally gave Timmy Cox authority over money and expenditures that Mr. Billie was not authorized to delegate to this non-Tribal member employee. During the proceedings, Mr. Billie asked about the documents supporting the charge and Mr. Billie was advised of the following:

- A letter signed by Tim W. Cox dated July 14, 2000, to Peter Ripich of Raymond James & Associates authorized Mr. Ripich to wire $15,000,000 to Gulfstream Aerospace Corporation.

- Mr. Billie was also reminded of a check dated April 10, 2000, in the amount of $1.6 million dollars, drawn on the investment account of the Seminole Tribe of Florida which was executed by Tim Cox and made payable to the order of a company known as Virtual Data, Ltd., an offshore business entity, controlled by James E. Billie, Danny Wisher and Timmy Cox for the purpose of conducting an illegal internet gaming venture.

The Tribal Council finds that this conduct violates Article IV, Section 4 of the Amended Constitution, as well as the Oath of Office prescribed by Article II of the By-laws of the Seminole Tribe of Florida. In addition, the conduct reflected in this charge exceeds the powers of the Chairman as prescribed by Article I, Section 1 of the Amended By-laws of the Seminole Tribe of Florida, thereby warranting his removal from office.

As to Charge #7, the Tribal Council finds that James E. Billie stated, under oath, that his allegiance was to his friends and colleagues, Timmy Cox and Danny Wisher, two non-Seminoles, and not to his Tribe regarding a dispute over the ownership of the Legends Hotel in Nicaragua. The Tribe and the Tribal Council fought hard in Nicaraguan courts to obtain the hotel on which the Tribe had spent so much money. The Tribal Council also finds that James E. Billie funded the lawsuits against the Tribe in order to help his friends attempt to steal the hotel from the Tribe. Although, Mr. Billie now claims that he was merely paying the money to keep his friends out of Nicaraguan jails, this statement is shown to be untrue by sworn testimony by which Mr. Billie swore, under oath in a recent federal trial, in the presence of God to tell the truth when he said the following:

> Q. And you sir, in fact provided them with money for that legal battle, did
> you not?
> A. Some, Yes.
> Q. And is it fair to say that you provided them with about $80,000?
> A. That could be, yes.
> Q. This was after they had been fired from the Tribe?
> A. I believe so.

In the same proceedings, Mr. Billie reiterated how he helped his friends wage a legal
battle against his Tribe when he stated the following:

> Q. After they had been fired you actually gave them money to fight a lawsuit
> against the Tribe, right?
> A. Correct.
> Q. $80,000 to fight the Tribe, right?
> A. If that what it amounts to.

The Tribal Council notes with interest that Mr. Billie has, during his long tenure as
Chairman, emphasized that members of the Seminole Tribe are "Seminoles first." With
this, we do not disagree. It is for that reason that we must conclude that James E. Billie
has committed acts against the Seminole Tribe which warrant his removal from office.

As to Charge #8, the Tribal Council finds that James E. Billie disregarded and
ignored the constitutional constraints placed upon him by the Seminole Tribe of Florida's
Constitution and acted as if the tribal government were his kingdom or his dictatorship.
Under oath, in a federal trial, James E. Billie stated that he regarded the Tribe's
investment account as his money to do with as he pleased. He also admitted at the same
trial that he authorized movement of Tribal funds from the safety of their investment
accounts to offshore accounts controlled by his friends, Timmy Cox and Danny Wisher.
Further, James E. Billie testified that it was his practice to spend this money without
consulting with or advising any other members of the Tribal Council. Mr. Billie also
stated under oath that he felt totally justified in doing whatever business ventures he
decided to do without advising the Tribal Council or the tribal membership. The conduct
contained in this Charge - - which James E. Billie does not deny - - is a violation of
Article IV, Section 4 of the Tribal Constitution as well the Oath of Office prescribed in
Article II of the Tribal Bylaws of the Seminole Tribe of Florida. The conduct described
also violates the powers of the Chairman as prescribed by Article I, Section 1 of the
Tribal Bylaws of the Seminole Tribe of Florida, thereby warranting his removal from
office.

As to Charge #9, the Tribal Council finds that following the enactment of Tribal
Council Resolution C-133-01 dated May 24, 2001, which suspended James E. Billie from
his position as Chairman of the Tribal Council, James E. Billie defied the mandate of the
Tribal Council and wrote to the federal government and to attorneys for the Tribe stating
that he was the lawful ruler of the Tribe and to ignore the directives of the legitimate
authority of the Tribal Council, conduct which Mr. Billie does not deny. Contrary to Mr.

Billie's belief, neither he nor any Tribal Council member nor any Tribal member is above the law. Mr. Billie's actions, at the very least, are disruptive of the government of the Seminole Tribe of Florida, and, in the worse light, would be equal to treason. The conduct contained in this Charge is a violation of Article III and Article V of the Amended Constitution of the Seminole Tribe of Florida which creates and defines the duties of the Tribal Council as the constitutionally constituted and ordained governing body of the Tribal Council of the Seminole Tribe of Florida. Mr. Billie's unilateral actions violate multiple provisions of each of these Articles which contemplate government by the collective wisdom of a constitutionally constituted governing body, thereby warranting his removal from office.

## CONCLUSION

Today marks a solemn day in the history of our Tribe. More serious still is the admitted misconduct of James E. Billie that warrants the action that the Tribal Council must take for the benefit of the sovereign government of the Seminole Tribe of Florida and its members. Accordingly, James E. Billie is hereby removed from the Office of Chairman of the Tribal Council, effective immediately.

# SO SAY WE ALL
Max B. Osceola, Jr., Acting Chairman
Mitchell Cypress, Vice-Chairman
David R. Cypress, Big Cypress Tribal Council Representative
John W. Huff, Sr., Brighton Tribal Council Representative

# EXHIBIT

## E

## DECLARATION OF CHRISTINE O'DONNELL
## UNDER PENALITIES OF PERJURY

STATE OF FLORIDA

             ss

COUNTYOF BROWARD

Before me, the undersigned authority this day personally appeared CHRISTINE O'DONNELL, who, after being first duly sworn upon his oath and according to law deposes and says under penalties of perjury the following:

1.      My name is Christine O'Donnell and I was employed in various positions with the Seminole Tribe of Florida until I was terminated in October 2000. At that time my position was working directly with and under the supervision of James E. Billie.

2.      During my employment with the Tribe, I had the opportunity to interact with many of the employees and members of the Tribe in my position as Administration Director in charge of operations and came to be very familiar with James Shore, the Tribe General Counsel.

3.      During my employment with the Tribe, I was able to observe Jim Shore in the performance of his duties and it was always clear that the Tribal Council members, including James E. Billie, relied on Jim Shore for legal advice in the performance of the individual duties of their elected offices.

4.      Many times, I was present when Jim Shore advised James E. Billie on legal matters, including the passage of the Tribal Personnel Manual, as well as other issues relative to the performance of James Billie's duties as Chairman of the Tribe.

5.      After my termination, Jim Shore actively advised me on the legal basis for pursuing claims of sexual harassment against the Seminole Tribe of Florida and James E. Billie arising out of a long-term affair that I had with James E. Billie.

6.      Following my termination, I spoke with Jim Shore on a regular basis for the purpose of asking him questions, seeking advice and counsel regarding the procedures associated with filing a claim against James E. Billie and the Seminole Tribe, and was advised and counseled to that end.

7.      Through Charles W. Helseth, a middle to upper management employee of the Seminole Tribe of Florida, it was stated to me on various occasions via telephone or at a local restaurant, that Jim Shore, Mitchell Cypress, and

David Cypress could not do anything to James E. Billie concerning my termination until a lawsuit was filed concerning a sexual harassment charge against James E. Billie. This continued up to and including the time that I did file such a charge and claim against the Tribe and Chairman James Billie.

8.   Following the dismissal of my complaint with the EEOC, Jim Shore, together with David Cypress and Mitchell Cypress, continued to push me to file a lawsuit against James E. Billie for sexual harassment and Jim Shore offered legal advice on the process for filing such a claim.

9.   On the date that I filed legal actions against James E. Billie, it was requested that I provide a copy of the complaint to Jim Shore, which was done via Mitchell Cypress and David Cypress.

10.   Within two weeks of my filing the legal action, Jim Shore, at the direction of Mitchell and/or David Cypress, had prepared a resolution to remove James E. Billie from office and ultimately said resolution was passed and James E. Billie was suspended on our about May 23, 2001.

11.   I have reviewed the complaint of James E. Billie, as well as Jim Shore's response to said complaint, and disagree with the position that Jim Shore has taken.

12.   During my tenure with the Seminole Tribe of Florida, it was the practice that all matters of any significance were to be reviewed by Jim Shore and his office and that Jim Shore would advise the departments, Tribal Council and Tribal Council members on how to proceed.

13.   It was understood that Jim Shore was the attorney representing not only the Tribe, but also providing legal advice and counsel to the Tribal Council members and employees.

14.   I am personally familiar with the matters contained in James Billie's complaint and set forth in this affidavit and sign this Declaration under penalties of perjury attesting to the fact that all matters contained herein are true and correct to the best of my knowledge.

FURTHER AFFIANT SAYETH NOT

3-15-03

Christine O'Donnell

FL O-354.101.61.945.0 EID
12.8.04

Notary Public   John Arsenau 17

JOHN ARSENAULT
My Comm Exp. 6/24/04
No. CC 947758
[ ] Personally Known [ ✓ ] Other I.D.

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET 03 - 60654

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS** James E. Billie

**DEFENDANTS** Seminole Tribe of Florida, Mitchell Cypress, David Cypress, Max Osceola, John Wayne Huff Sr., Jim Shore, Priscilla Sayen

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Hendry
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Broward
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Broward 0:03cv 60654 KAM/BSS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Saunooke Law Firm P.A.
18620 SW 39th Court Miramar FL 33029

ATTORNEYS (IF KNOWN)

# CIV-MARRA
## MAGISTRATE JUDGE
### SELTZER

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

2003 APR

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | B☐ 530 General | ☐ 791 Empl. Ret. Inc Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☒ 444 Welfare | B☐ 535 Death Penalty | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

25 USC 1301-1303
Violations of Indian Civil Rights Act

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE Dimitrouleas / Seltzer   DOCKET NUMBER 02-61442-CV

DATE 4/3/03

SIGNATURE OF ATTORNEY OF RECORD   4-1-03

**FOR OFFICE USE ONLY**

RECEIPT # 527665   AMOUNT 150.00   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___